In the Matter of **QUAKERTOWN SHOP-PING CENTER, INC.,** Bankrupt.

**United States of America, Appellant.**

No. 15682.

United States Court of Appeals
Third Circuit.

Argued March 8, 1966.

Decided Sept. 13, 1966.

Howard M. Koff, Dept. of Justice, Tax Division, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Sidney Salkin, Asst. U. S. Atty., on the brief), for appellant.

M. E. Maurer, Philadelphia, Pa. (Wexler, Mulder & Weisman, Philadelphia, Pa., Furst, Furst & Feldman, Newark, N. J., on the brief), for trustee in bankruptcy of Electricon Suburban, Inc., appellee.

Before SMITH and FREEDMAN, Circuit Judges and MILLER, District Judge.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

The question presented is whether the District Director of Internal Revenue may validly serve notice of levy under the Internal Revenue Code of 1954, §§ 6331–6332, on a Chapter XI receiver to attach the claim of a taxpayer against its debtor in receivership without the prior permission of the Bankruptcy Court.

On May 27, 1960 the United States assessed tax liabilities of $15,334.03 for withholding and F.I.C.A. taxes against Electricon Suburban, Inc. On July 6, 1960 Electricon filed a proof of claim in the amount of $130,000 [1] with the receiver of Quakertown Shopping Center, Inc., who had been appointed on May 26, 1960 by the District Court for the Eastern District of Pennsylvania after the filing of a Chapter XI petition for arrangement. A short time later, on July 27, 1960, the District Director of Internal Revenue, without seeking the permission of the Bankruptcy Court, served a notice of levy in the amount of $15,334.03 "together with all additions provided by law" on the Quakertown receiver to attach Electricon's claim as a creditor of Quakertown. The notice stated that all property, rights to property, moneys and credits in the possession of the receiver and belonging to the taxpayer (or with respect to which the receiver was obligated) and all sums of money or other obligations owing by the receiver to the taxpayer "are hereby levied upon and seized for satisfaction of the aforesaid tax, * * * and demand is hereby made upon you for the amount necessary to satisfy the liability. * * *" Sometime later Electricon's claim against Quakertown was allowed in the amount of $130,-000. The dividend thereon amounts to $34,913.15, which is more than sufficient to pay the government's claim against Electricon with interest.

Before the referee and in the district court the government claimed that the levy was authorized by § 301.6331–1(a) (3) of the Treasury Regulations adopted under the 1954 Code. This provision recognizes that during bankruptcy or receivership the assets of a taxpayer generally are under the control of the court and that taxes cannot be collected by levy upon assets in the custody of the court. It declares that an exception exists where the proceeding has progressed to such a point that the levy would not interfere with the work of the court or where the court grants permission to levy.[2] The referee adopted the government's contention and found that the Quakertown proceeding had progressed to a point where the service of notice of the levy would not interfere with the administration and liquidation of the estate or the work of the court or the receiver and trustee. The referee therefore awarded the full amount of the tax claim with interest to the District Director, and the remainder of the dividend was ordered to be paid to the estate of Electricon, which had itself filed a Chapter XI petition (later converted into a bankruptcy) on August 9, 1960.

On review the learned district judge rejected the government's view and held that the levy was unauthorized without

---

1. It was originally filed in the amount of $139,669.26.

2. "During a bankruptcy proceeding in either a Federal or State Court the assets of the taxpayer are in general under control of the court in which such proceeding is pending. Taxes cannot be collected by levy upon assets in the custody of a court, whether or not such custody is incident to a bankruptcy or receivership proceeding, except where the proceeding has progressed to such a point that the levy would not interfere with the work of the court or where the court grants permission to levy. * * *"

the prior permission of the Bankruptcy Court because the funds were in custodia legis.[3] In re Quakertown Shopping Center, Inc., 248 F.Supp. 749 (E.D.Pa.1965).

On appeal the government has wisely abandoned reliance on the Regulation and its position now is far different from that urged on the district judge.

■ In our view the Regulation applies only to a levy made upon a taxpayer in bankruptcy or receivership and not to one made by way of an attachment against an estate which is indebted to the taxpayer.

With the Regulation out of the case the question is whether the levy is forbidden by the Bankruptcy Act or by the general doctrine that property in custodia legis is not attachable.

Section 6321 of the Internal Revenue Code of 1954 confers a lien in favor of the United States upon all property and rights to property belonging to any person liable for any tax who neglects to pay it after demand. Section 6331 of the Code authorizes the government to collect the tax by levy upon all property and rights to property belonging to the taxpayer. The right to levy includes the power to distrain and seize "by any means", and the government is authorized to seize and sell the property or rights to property of the taxpayer. Section 6332(a) of the Code requires that any person in possession of property or rights to property subject to levy upon which a levy has been made shall on demand of the government surrender such property and if obligated with respect thereto shall discharge such obligation to the government.[4] Section 6332(b) of the Code provides that any person who fails or refuses to comply with the levy shall be liable personally to the United States for the value of property, but not exceeding the amount of the government's claim with costs and interest.

"The right of the United States to collect its internal revenue by summary administrative proceedings", said Mr. Justice Brandeis, "has long been settled." Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). More recently Chief Judge Biggs in United States v. Sullivan, 333 F.2d 100, 116 (3 Cir. 1964) described this summary administrative remedy of self-help which is derived from the sovereign power of taxation. "Levy is a summary, non-judicial process, a method of self-help authorized by statute which provides the Commissioner with a prompt and convenient method for satisfying delinquent tax claims. [citing authorities] Statutory levy is substantially broader in scope than anything known to the common law, and it is applicable to intangible as well as to tangible property. [citing authority] When validly invoked, it effects a seizure of the delinquent's property tantamount to a transferal of ownership. [citing authority] The very nature and breadth of this somewhat drastic administrative process gives continued emphasis to its raison d'être and serves to underscore the fundamental truth that 'taxes are the lifeblood of government, and their prompt and certain availability an imperious need.' Bull v. United States, * * * 295 U.S. [247,] at 259, 55 S.Ct. 695, 79 L.Ed. 1421. * * *"

■ The United States here was simply exercising its right of self-help expressly granted to it by the same authority which created the Bankruptcy Court and authorized Chapter XI proceedings. The doctrine which bars attachment of property in custodia legis is based on the desirability of avoiding a clash between judicial jurisdictions which would result from any attempt to use the process of one to seize assets in the control of another judicial authority. Such collisions are especially pronounced where the judicial departments belong to different sovereignties, as in the case of garnishment process issuing out of a state court to attach property in the

---

3. The district judge was not called upon to decide whether the Bankruptcy Court has power to permit such attachment.

4. An exception stated in the Act is not here relevant.

hands of a receiver of the federal Bankruptcy Court. But the present case is not one in which there is a judicial attachment issuing out of some other court, seeking to seize property in the possession of the Bankruptcy Court. None of the evils of collision between the judicial process of one court and another court's authority over the funds can arise here. In the absence of the reason for the rule, the rule itself can have no application.

■ In making a levy such as this the United States becomes in effect the involuntary assignee of the creditor. It does not invade the jurisdiction of the Bankruptcy Court or interfere with the administration of the estate. It merely serves notice on the receiver or trustee that whatever funds otherwise would be paid to the taxpayer shall instead be paid to the government as the distrainor, to the extent of the amount due it. We are here on familiar ground. A creditor may voluntarily transfer his claim against a bankrupt estate without obtaining the approval of the Bankruptcy Court. 3 Collier on Bankruptcy (14th ed. 1966), § 57.06. We deem the levy to be similar in effect to an assignment, albeit involuntary on the part of the creditor of the bankrupt. In another sense, since the assignment constitutes a claim to intangible property which is not immediately reducible to possession it also has the characteristic of a lien.[5] The analogy to an assignment is not destroyed because General Order 21 provides for notice by the referee to the original claimant, and affords him an opportunity to object within ten days, since there is no need for such provision in the case of seizure by the government. Jeopardy assessments illustrate the power of the government to seize property in satisfaction of tax liability which it has assessed, long before judicial proceedings will determine on the taxpayer's application whether the government's seizure of his property was

justified. See Phillips v. Commissioner of Internal Revenue, supra; Quinn v. Hook, 231 F.Supp. 718 (E.D.Pa.1964), affirmed 341 F.2d 920 (3 Cir. 1965); 9 Mertens, Law of Federal Income Taxation (1965 Revision), §§ 49.144, et seq.

■ We hold, therefore, that the levy was valid and enforceable and that the amount of the assessment was payable to the United States as the creditor of Electricon out of the Quakertown estate.

This brings us to the question of interest on the government's claim. The levy seized Electricon's claim against Quakertown to the extent of the government's claim of $15,334.03 "together with all additions provided by law".

■■ It is clear that the government would not be entitled to post bankruptcy interest on its claim as a creditor of either Quakertown or Electricon. Nicholas v. United States, 384 U.S. 678, 682, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). We believe it would be unjustified to consider that the levy has the effect of carving out of the Quakertown bankruptcy the government's claim with interest until the date of payment so long as it does not exceed the full amount of the dividend payable to Electricon. There is symmetry in such a view, based as it is on the theory that the levy transferred immediately to the government the assets of Quakertown to that extent. The theory is useful by way of analogy in indicating the superior right which the levy gives the government, but it cannot be pressed too far. The property is intangible and is part of the assets administered by the receiver. In effect the government is an assignee or lienor of Electricon as creditor of Quakertown, and as such is entitled to be paid out of the dividends which Electricon would receive. But the amount which the government is entitled

5. See United States v. Sullivan, 333 F.2d 100, 116 (3 Cir. 1964); Rosenblum v. United States, 300 F.2d 843, 844–845 (1 Cir. 1962); In the Matter of Cherry Valley Homes, Inc., 255 F.2d 706, 707 (3 Cir. 1958), cert. denied, sub nom. Dubois v.

United States, 358 U.S. 864, 79 S.Ct. 96, 3 L.Ed.2d 97 (1958); Freeman v. Mayer, 253 F.2d 295 (3 Cir. 1958); United States v. Eiland, 223 F.2d 118, 121 (4 Cir. 1955).

to be paid as assignee or lienor is bounded by the doctrine that Electricon's bankruptcy stops the running of interest on the government's tax claim against it, even as against such a claimant.[6] Taxation is an eminently practical matter. The theoretical assignment to the government or its lien upon Electricon's claim against Quakertown and its theoretical right to the intangible property, while fully justifying its seizure, is not enough to destroy the well-settled principle that interest on the government's tax claim ceases to run on the taxpayer's bankruptcy.

The government, therefore, is entitled to the payment out of the dividend due Electricon of its claim of $15,334.03 with interest thereon only to August 9, 1960 when Electricon filed its petition under Chapter XI.

The judgment of the district court will be reversed and the cause remanded for further proceedings in accordance with this opinion.

Duniway, Circuit Judge, dissented.

---

6. United States v. Bass, 271 F.2d 129 (9 Cir. 1959); United States v. Harrington, 269 F.2d 719, 722 (4 Cir. 1959).