765 F.2d 1410
 13 Collier Bankr.Cas.2d 209, Bankr. L. Rep. P 70,649
In re Wayne M. NASH and Jeanette Nash, Debtors.
Wayne M. NASH and Jeanette Nash, Plaintiffs/Appellants,
v.
Duncan H. KESTER, Trustee and National Semiconductor Federal
Credit Union, Defendants/Appellees.
 No. 84-2539.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1985.
Decided July 17, 1985.
 
 Robert M. Allen, San Jose, Cal., for plaintiffs/appellants.
 Joseph R. Thompson, San Jose, Cal., Jack D. Berghouse, Santa Clara, Cal., for defendants-appellees.
 Appeal from the United States District Court, Northern District of California.
 Before HALL and WIGGINS, Circuit Judges, and JAMESON,* District Judge.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 I. FACTS.
 
 
 2
 Plaintiffs Wayne and Jeanette Nash (the "Nashes") filed a voluntary petition for relief under Chapter 13 of the 1978 United States Bankruptcy Code (the "1978 Code") on April 25, 1980. Defendant Duncan Kester (the "Trustee") was appointed the Chapter 13 trustee. Defendant National Semiconductor Federal Credit Union (the "Credit Union"), which had financed the Nashes' purchase of two automobiles, filed a secured claim with the bankruptcy court in the amount of $6,728.50. The Credit Union's secured claim was allowed as part of the Chapter 13 plan confirmed by the bankruptcy court on July 1, 1980. The plan also provided that the Nashes were to make monthly payments to the Trustee in the amount of $220. Because the Nashes subsequently failed to make the required monthly payments, the bankruptcy court issued a Wage Deduction Order in May 1981 requiring Wayne Nash's employer to forward a monthly payroll deduction of $220 to the Trustee.
 
 
 3
 At the Nashes' request, the bankruptcy court dismissed the Chapter 13 petition on July 22, 1983 (unless otherwise noted, all further events occurred in 1983). On that date, the Trustee had in his possession $907.14 which had previously been received under the Wage Deduction Order. Also on that date, the Nashes' attorney called and told the Credit Union that the Nashes would be returning for resale the two automobiles held as security by the Credit Union.
 
 
 4
 On July 25, the Trustee received an additional check totalling $50.59 under to the Wage Deduction Order. The Trustee admits receiving a copy of the Chapter 13 dismissal order on approximately August 1. The Nashes filed a second Chapter 13 petition on August 2 and claimed as exempt under 11 U.S.C. Sec. 522(d)(5) the $957.73 in wage deductions held by the Trustee. The Credit Union was listed as an unsecured creditor in the second Chapter 13 debt schedules filed by the Nashes. The Trustee received copies of the second Chapter 13 petition, plan, and schedules on August 4.
 
 
 5
 The Trustee completed a final report regarding the first Chapter 13 case on August 24. On August 26, the Trustee paid the Credit Union $942.56 as a payment under the first Chapter 13 plan. With the receipt of that payment and the money from the sale of the two cars returned by the Nashes, the Nashes' account balance with the Credit Union was reduced to $1405.96. The remaining cash held by the Trustee ($15.17) was kept by the Trustee for his administrative expenses and compensation. The bankruptcy court approved the Trustee's final report, discharged the Trustee and closed the first Chapter 13 case on September 22.
 
 
 6
 The second Chapter 13 plan was confirmed on September 26 and the same Trustee was appointed. Under the second plan, the Nashes were to pay the Trustee $295 a month. The Credit Union was listed as an unsecured creditor on the debt schedules. However, the Credit Union failed to file a formal claim in the second case.
 
 
 7
 The present action was filed by the Nashes on October 11, 1983. The Nashes alleged that the $957.73 in wage deductions had been wrongfully distributed by the Trustee after the first Chapter 13 case had been dismissed. The bankruptcy court granted summary judgment for the Trustee and the Credit Union and denied the Nashes' summary judgment motion. The district court affirmed on appeal and entered judgment for the defendants.
 
 
 8
 II. STANDARD OF REVIEW.
 
 
 9
 The bankruptcy court's grant of summary judgment, affirmed by the district court, is subject to de novo review. See In re New England Fish Co., 749 F.2d 1277, 1280 (9th Cir.1984).
 
 
 10
 III. ANALYSIS.
 
 
 11
 A. Dismissal Effectively Vacated First Confirmed Chapter 13 Plan.
 
 
 12
 Both defendants rely upon 11 U.S.C. Sec. 1327(a) in arguing that the Nashes were obligated by res judicata principles to pay the amount of the claims allowed under the first confirmed plan. Section 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. Sec. 1327(a). Section 1327(a) must be read in conjunction with 11 U.S.C. Sec. 1307(b), which provides that "[o]n request of the debtor at any time ... the court shall dismiss a case under [Chapter 13]." Under Sec. 1307(b), a debtor has an absolute right to dismiss a Chapter 13 petition. See In re Gillion, 36 Bankr. 901, 905 (E.D.Ark.1983); In re Merritt, 39 Bankr. 462, 465 (Bankr.E.D.Pa.1984). A debtor is not barred by res judicata from listing debts in a later Chapter 13 petition that were listed in a previous Chapter 13 case which was dismissed without prejudice and without obtaining a discharge of the debts. See In re Landis, 29 Bankr. 235, 238 (Bankr.D.Kan.1983); 11 U.S.C. Sec. 349(a).
 
 
 13
 We reject the defendants' contention that the Nashes continued to be bound by the terms of the first confirmed plan after dismissal. The dismissal effectively vacated the first confirmed plan. Cf. In re Doyle, 11 Bankr. 110, 111 (Bankr.E.D.Pa.1981) (once Chapter 13 case is converted to Chapter 7, order confirming Chapter 13 plan is no longer in force).
 
 
 14
 The only case cited by either defendant in support of the res judicata argument is Levy v. Cohen, 19 Cal.3d 165, 137 Cal.Rptr. 162, 561 P.2d 252, cert. denied, 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977). Levy involved a plan confirmed under Chapter XII of the Bankruptcy Act of 1898 (the "1898 Act"). Id. at 170, 137 Cal.Rptr. at 165, 561 P.2d at 255. The court in Levy held that the plaintiff was barred by res judicata from relitigating a debt discharged in the bankruptcy proceeding, id. at 174, 137 Cal.Rptr. at 168, 561 P.2d at 258, but Levy is distinguishable from the present case. The 1898 Act applicable in Levy provided for the discharge of unsecured debts upon confirmation of a Chapter XII plan. See 11 U.S.C. Sec. 771 (repealed). Under the 1978 Code applicable in this case, the confirmation of a Chapter 13 plan does not discharge any debts. A discharge occurs only if the debtor completes all payments under the plan or if the debtor receives a hardship discharge. See 11 U.S.C. Sec. 1328. Therefore, Levy does not govern the application of res judicata in this case.
 
 
 15
 The defendants also contend that the Trustee was required to distribute funds to the creditors under the plan until he was discharged as trustee. The Trustee's duties did not end when the Chapter 13 case was dismissed. The Trustee was required to make a final report regarding the administration of the estate, 11 U.S.C. Secs. 704(8) & 1302(b)(1), and he was not discharged until the bankruptcy court approved the final report and closed the case on September 22, 1983. See 11 U.S.C. Sec. 350. Nonetheless, the defendants cite no case law or statutory authority which supports their claim that the Trustee was required to continue making distributions of the estate under the plan after the case had been dismissed.[1] Because the first plan was effectively vacated by the dismissal, the Trustee was not required to continue making payments under the plan.
 
 
 16
 B. Distribution of $50.59 Received After Dismissal.
 
 
 17
 The property of a Chapter 13 estate includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first." 11 U.S.C. Sec. 1306(a)(2) (emphasis added). Under Sec. 1306(a)(2), the $50.59 received by the Trustee after dismissal of the first Chapter 13 case never became part of the first Chapter 13 estate. The $50.59 belonged to the Nashes and should not have been distributed to the Credit Union. See In re Richardson, 20 Bankr. 490, 492 (Bankr.W.D.N.Y.1982) (debtors' wages received by trustee after Chapter 13 case had been converted to Chapter 7 held not part of either Chapter 13 or Chapter 7 estate).
 
 
 18
 C. Distribution of $907.14 Received Before Dismissal.
 
 
 19
 The $907.14 received by the Trustee before dismissal was the property of the estate because it was received after commencement of the case but before dismissal. 11 U.S.C. Sec. 1306(a)(2). The $907.14 was submitted to the "supervision and control" of the Trustee. See 11 U.S.C. Sec. 1322(a)(1). However, ownership over all of the property of the estate, including the $907.14, vested in the Nashes once the plan was confirmed. 11 U.S.C. Sec. 1327(b). See 5 Collier, supra note 1, p 1327.01, at 1327-3.
 
 
 20
 The Nashes' ownership of the $907.14 is further supported by the fact that a Chapter 13 dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. Sec. 349(b)(3). The legislative history of Sec. 349(b) states that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S.Rep. No. 989, 95th Cong., 2d Sess. 49, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5835. We have previously stated that Sec. 349 "obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy." In re Income Property Builders, Inc., 699 F.2d 963, 965 (9th Cir.1982) (per curiam).
 
 
 21
 The defendants argue that wage deductions held by a trustee when a Chapter 13 case is dismissed no longer belong to the debtor. They rely on Resendez v. Lindquist, 691 F.2d 397, 399 (8th Cir.1982), and In re Giambitti, 27 Bankr. 492, 493 (Bankr.D.Or.1983), both of which hold that all of the property of a Chapter 13 estate, including wage deductions, must be delivered to the Chapter 7 trustee when a Chapter 13 case is converted to Chapter 7. Contra, In re Bullock, 41 Bankr. 637, 641 (Bankr.E.D.Pa.1984). Even assuming that Resendez and Giambitti correctly hold that wage deductions received prior to dismissal no longer belong to a Chapter 13 debtor during the administration of the plan, those cases involved a conversion to Chapter 7. They do not address the fact that dismissal revests the property of the estate in the debtor. 11 U.S.C. Sec. 349(b)(3). No similar Bankruptcy Rule or Code provision contemplates the revesting of the estate property upon conversion to Chapter 7.
 
 
 22
 We conclude that the $907.14 belonged to the Nashes upon dismissal of the first Chapter 13 case. The $907.14 should not have been distributed by the Trustee to the Credit Union after dismissal.
 
 
 23
 Under the 1978 Code, unwary creditors may suffer losses at the hands of debtors who abuse the multiple filing opportunities provided by Chapter 13. We are disturbed by the potential inequity of this result, but in the present case we are constrained by the express language of the Code. Congress recently indicated its awareness of some abuses resulting from repetitive filings, and amended 11 U.S.C. Sec. 349(a) and added 11 U.S.C. Sec. 109(f). See Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98-353, Secs. 301 & 303, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 333, 352 ("1984 Cong.News").[2] See also 1984 Cong.News 576, 590, 598 (statement of Sen. Hatch) (BAFJA includes reform addressing subject of multiple filings). However, except for the limited circumstances under 11 U.S.C. Sec. 109(f), Congress continues to grant debtors an absolute right to dismiss a Chapter 13 plan. Absent further Congressional action, debtors such as the Nashes may file successive Chapter 13 plans as long as each new plan is proposed in good faith. See 11 U.S.C. Sec. 1325(a)(3).
 
 
 24
 Creditors must be wary when a debtor files successive Chapter 13 plans. To protect their rights, creditors should carefully review any new plan to ensure that it is bona fide. A debtor's history of filings and dismissals is relevant in determining whether a plan has been proposed in good faith. See In re Landis, 29 Bankr. 235, 238 (Bankr.D.Kan.1983). The defendants in this case failed to object to the Nashes' second plan. Unfortunately, the present adversary proceeding is not the proper time to raise the issue of the bad faith of the second plan.
 
 
 25
 D. Liability for Improper Distribution.
 
 
 26
 A trustee is accountable for all property received. 11 U.S.C. Secs. 704(2) & 1302(b)(1). See In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir.1983). The Trustee admitted receiving notice of the dismissal of the Nashes' first Chapter 13 case prior to distributing the $957.73. The Trustee therefore is liable for the improper distribution. On remand, the Nashes are entitled to a judgment against the Trustee for either $957.73 or $942.56[3] and an order directing the Trustee to perform all acts necessary to obtain a refund of the $942.56 distributed to the Credit Union.[4]
 
 
 27
 REVERSED and REMANDED.
 
 
 28
 JAMESON, District Judge, concurring in part and dissenting in part:
 
 
 29
 I agree that the $50.59 received by the Trustee after dismissal of the first Chapter 13 case belonged to the Nashes and should not have been distributed to the Credit Union. I concur in the majority opinion reversing this portion of the judgment. I would affirm, however, the holding of the bankruptcy court, affirmed by the district court, granting summary judgment for the Trustee and Credit Union, with respect to the $907.14 received by the Trustee before dismissal of the first Chapter 13 case.
 
 
 30
 We are presented with the question of whether Chapter 13 debtors can claim moneys paid to the Trustee pursuant to the order confirming the debtors' first Chapter 13 plan, but not distributed by the Trustee when the first Chapter 13 case is dismissed. In upholding the payment to the Credit Union, the bankruptcy court relied heavily on Resendez v. Lindquist, 691 F.2d 397 (8th Cir.1982) and In re Giambitti, 27 Bankr. 492 (Bankr.D.Ore.1983).
 
 
 31
 In Resendez the court held that debtors who have converted a Chapter 13 proceeding into a Chapter 7 plan may not claim as exempt undistributed paid to the Chapter 13 trustee, since "[t]hese funds no longer belonged to the debtors but became part of their estate." The court found that it "would be unfair to permit the moneys to be now claimed as exempt under his Chapter 7 proceeding on the basis that they had not been distributed to the creditors." Resendez, 691 F.2d at 399.
 
 
 32
 In re Giambitti also involved funds in the possession of the Trustee when the debtor converted to a Chapter 7 plan. The court concluded:
 
 
 33
 In view of the Sec. 1327 which makes a confirmed plan binding on the debtor as well as the creditors, and Sec. 1307 which permits the debtor as well at any time to dismiss the case or convert it to chapter 7, it would be unfair to permit the debtor to claim as exempt funds which the debtor has voluntarily committed to the plan.
 
 
 34
 27 Bankr. at 493.
 
 
 35
 It is true, as the majority opinion states, that both Resendez and Giambitti involved conversion to a Chapter 7 plan rather than a dismissal. The bankruptcy court, however, concluded that the same reasoning applied to a dismissal, holding that it would be unfair to creditors to allow the debtors to have the benefits of Chapter 13 and then exempt plan funds already in the Trustee's possession when they dismiss and file a new Chapter 13 petition. I agree.
 
 
 36
 The majority opinion recognizes the potential inequity to creditors who may suffer losses at the hands of debtors who abuse the multiple filing opportunities provided by Chapter 13, but concludes that the court is constrained by the express language of the Bankruptcy Code. 11 U.S.C. Sec. 349, relating to the "Effect of Dismissal," provides in subsection b(3) that a dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case...." The majority opinion concludes that the $907.14 paid to the Trustee revested in the Nashes upon dismissal of the first Chapter 13 case.
 
 
 37
 The purpose of subsection (b) of Sec. 349 is stated in the Historical and Revision notes: "The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." Notes of Committee on the Judiciary, Senate Report No. 93-589, U.S.Code Cong. & Admin.News 1978, 5835. We are not concerned here, however, with property in the possession of the debtors when the first Chapter 13 case was commenced, but rather with moneys earned by the debtor subsequent to the filing of the case and voluntarily paid to the Trustee for the benefit of the creditor, pursuant to a plan confirmed by the court.
 
 
 38
 Black's Law Dictionary defines vested as: "Having the character or given the rights of absolute ownership; not contingent; not subject to the defeated by a condition precedent." 1401 (rev. 5th ed. 1979). The $907.14 at issue is money paid out of Nash's wages to the Trustee pursuant to the Nashes' Chapter 13 plan. Nash's interest vested in his wages as he performed the services which were a condition precedent to payment by his employer. His interest in his wages had not, in my opinion, vested "before the commencement of the case."
 
 
 39
 Nash gave up any claim to the money when, pursuant to the confirmed plan, it was paid to the Trustee for the benefit of the Credit Union. This conclusion is supported by 11 U.S.C. Sec. 1326 which imposes a duty on the Trustee to "make payments to creditors under the plan." Upon receipt of moneys paid pursuant to the plan the Trustee has a duty to distribute the money according to the plan. Even after the plan is dismissed the Trustee continues to have a duty to distribute the funds received before dismissal.
 
 
 40
 I would affirm the summary judgment in favor of the Trustee and Credit Union with respect to the $907.14 received by the Trustee prior to dismissal.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Section 1326(b) of the 1978 Code states that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. Sec. 1326(b) (now subsection (c) ). However, section 1326(b) was intended to address only the question of who should act as disbursing agent (debtor, trustee, or someone else) of Chapter 13 plan funds. Section 1326(b) does not address whether the Trustee was required to continue making distributions after the first Chapter 13 case was dismissed. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 430, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6386 (section 1326(b) "designates the trustee as disbursing agent, unless the plan or the order confirming the plan provides otherwise"). See also 5 Collier on Bankruptcy p 1326.01, at 1326-8 (15th ed. 1985)
 
 
 [2]
 Section 349(a) now provides that "the dismissal of a case under this title [does not] prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title." 11 U.S.C. Sec. 349(a) (effective October 1984). Section 109(f) states:
 [N]o individual may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if--
 (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.
 11 U.S.C. Sec. 109(f).
 
 
 [3]
 In their Complaint, the Nashes did not seek recovery of the $15.17 retained by the Trustee for administrative expenses. The Nashes now seek recovery of the $15.17. On remand, the court should determine whether the Trustee is entitled to the $15.17 even though he improperly distributed the wage deduction payments. If the Trustee is not entitled to the $15.17, the court should decide whether the Nashes may amend their Complaint to seek a judgment in the amount of $957.73. See Fed.R.Civ.P. 15(a) & (b)
 
 
 [4]
 The Nashes seek to hold the Credit Union jointly and severally liable for the $942.56. In the alternative, they seek an injunction requiring the Credit Union to turn over the $942.56 to the Trustee. On remand, the court should determine whether the Nashes are entitled to either (or both) of the remedies against the Credit Union