### In the Matter of INTERNATIONAL ENGINEERS, INC., Bankrupt.

### No. 85 Civ. 7899(JMW).

United States District Court, S.D. New York.

March 18, 1986.

Gerald H. Ullman, New York City, for plaintiff.

Michael Berman, New York City, for defendant.

WALKER, District Judge.

### Introduction

Export-Import Services, Inc., a creditor of the bankrupt, appeals a decision of the Bankruptcy Court denying it priority standing in the bankrupt estate. The court below found that appellant was entitled to the status of a general unsecured creditor.

### Facts

The undisputed facts are as follows: Appellant is a customs broker which performs a variety of services in connection with the import trade to facilitate the movement of imported goods into this country. Between June 23, 1972 and February 21, 1973, one of its clients was the bankrupt importer, International Engineers, Inc., for whom appellant performed a service which is at the heart of this matter: As part of its relationship with the importer, appellant voluntarily, and without obligation, paid $21,407.97 in customs duties on behalf of International Engineers to the United States Customs Service. On May 8, 1973, after those duties were paid, but before appellant was reimbursed, International Engineers was adjudicated a bankrupt.

The claim advanced below and on this appeal is that since the government would have been entitled to priority creditor status if the duties were unpaid, appellant should be entitled to that enhanced position since it paid the tax obligation. Simply put, appellant wants to stand in the shoes of the government and obtain the priority enjoyed by the government on outstanding tax obligations. The Bankruptcy Court rejected appellant's attempt to assume governmental priority.

### Discussion

The legal issue on this appeal is straightforward: Can a creditor, who voluntarily pays the tax obligation of another, claim the government's priority on that tax claim in a bankrupt estate? The resolution of the issue is also simple. In *I.C. Herman & Co., Inc. v. Taub, Hummel & Schnall, Inc.*, 497 F.2d 1301 (2d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 153, 42 L.Ed.2d 125 (1974), the Second Circuit held, on virtually identical facts, that a customs broker who pays the import duties of a client is not entitled to stand in the shoes of the government with respect to the priority of claims in bankruptcy.

The court's statement of the facts in *Herman* demonstrates that the case controls here:

> [Appellant] ... is a customs broker. [The bankrupt] ... is an importer of goods from abroad. [Appellant] acted as customs broker for [the bankrupt]. The goods without exception were imported in [the bankrupt's] name.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> During the period from March 3, 1972 through April 7, 1972, [appellant] advanced the sum of $32,048.45 in payment of [the bankrupt's] customs duties due on ... imports.
>
> \*　　\*　　\*　　\*　　\*　　\*

[Appellant] argues that, as a result of discharging [the bankrupt's] obligations to the government arising from the assessment of import duties, it is entitled to the priority to which the United States would be entitled for debts due the government. [Appellant's] priority claim is based in essence on principles of subrogation.

497 F.2d at 1302. On the basis of these facts—precisely those at issue in the present case—the Second Circuit held that the appellant was *not* entitled to assume the government's priority. That holding binds this Court.

Appellant has attempted to avoid the effect of *Herman* by characterizing the transaction in question here as an "involuntary assignment" and not a subrogation as in *Herman*. It claims that the issue here was not considered in *Herman*. That effort is unavailing for two reasons.

First, whatever label one applies to the actions at issue, the plain fact is that the identical situation was dealt with in *Herman*, and the customs broker was denied priority. Simply changing the semantic label under which priority is claimed does not distinguish away *Herman*. In fact, the language of the opinion indicates that the court characterized the claim for convenience as "based in essence on the principles of subrogation." It did not say it was limiting itself to a consideration of a subrogation question; the court merely considered subrogation the most analogous legal doctrine. Second, even if the "assignment" label is employed, and it is accepted that some claims on a bankrupt estate may be assigned, appellant has offered no precedent addressing the present situation, where the appellant asserts that the *government* involuntarily "assigned" its unique priority status.

Appellant cites *In re Quakertown Shopping Center*, 366 F.2d 95 (3rd Cir.1966) as authority for the proposition that claims on a bankrupt estate may be involuntarily assigned. That decision is inapposite. In *Quakertown*, the IRS had levied against one of the bankrupt's priority creditors without the consent of the bankruptcy court and wanted to assume that creditor's priority. The Third Circuit found that the government was entitled to the creditor's priority on the theory that "the United States becomes in effect the involuntary assignee of the creditor ... We deem the levy to be similar in effect to an assign-

ment, albeit involuntary, on the part of the creditor of the bankrupt." *Id.* at 98.

*Quakertown* concerned the government's ability to gain priority in an already bankrupt estate by levying on a creditor. It did not consider a creditor's ability to gain the priority accorded the United States on tax obligations. Indeed, the court stated that "the United States here was simply exercising its right of self-help expressly granted to it by the same authority which created the Bankruptcy Act and authorized Chapter XI proceedings." *Id.* at 97. On the other hand, *Herman* considered precisely the question at issue here. Appellant's effort to distinguish that case because it did not use the language of "assignment" is unpersuasive.

It should be noted, however, that Judge Friendly dissented strongly and persuasively in *Herman*. He argued that the majority had misread prior precedent and mistakenly applied the ban on assumption of governmental priority to that situation. He argued that "[u]nder general equitable principles [appellant] should be allowed subrogation to the Government's priority if [the bankrupt] would have been 'unjustly enriched by the retention of the benefit ... conferred' when [appellant] paid the duties. (citation omitted)" *Id.* at 1304. He also maintained that granting priority made good policy sense "in light of the crucial role and extensive duties of a customs broker in effecting the rapid entry of imports..." *Id.*

It may also be true that according priority to customs brokers would facilitate more cost-effective collection of customs duties by the government. Such a rule would create an incentive for brokers to pay the tax to speed importation and at the same time reduce the government's administrative costs by letting the private sector prosecute tax claims against bankrupt importers.

### Conclusion

Whatever the relative merit of policy interests at stake, however, it remains that this Court is bound by a decision of the

Second Circuit directly on point. Appellant's efforts to distinguish *Herman* by couching its claim in the language of "assignment" is unsuccessful. By any other name, such assumption of priority is impermissible in this context. The decision of the Bankruptcy Court is AFFIRMED.

So Ordered.