**Kathleen A. LAUGHLIN,**
**Trustee, Appellant,**

v.

**UNITED STATES INTERNAL**
**REVENUE SERVICE,**
**Appellee (Two Cases).**

**Kathleen A. LAUGHLIN, Appellant,**

v.

**UNITED STATES INTERNAL**
**REVENUE SERVICE,**
**Appellee.**

**No. 89–1598.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1990.

Decided Aug. 15, 1990.

Rehearing and Rehearing En Banc Denied
Sept. 25, 1990.

Howard N. Kaplan, Omaha, Neb., for appellant.

Joel A. Rabinovitz, Washington, D.C., for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Kathleen A. Laughlin appeals from the

---

* The HONORABLE ANDREW W. BOGUE, United States Senior District Judge for the District of South Dakota, sitting by designation.

district court's[1] order denying her motion to enforce the automatic stay of 11 U.S.C. § 362 against the Internal Revenue Service (IRS), which issued a notice of levy to Laughlin in her capacity as trustee of Chapter 13 bankruptcy estates for the District of Nebraska. We affirm.

## I.

Seeking funds from which to satisfy the Elskens' tax liability, the IRS served Laughlin with a notice of levy upon funds payable to Michael J. Elsken and Deanne Elsken from Chapter 13 estates Laughlin administers. Because the levy did not refer to any specific bankruptcy actions, Laughlin made a manual search through her records of the approximately 1,700 cases she was administering at the time. She determined that the levy applied to three separate bankruptcy actions in which debtors owed attorney fees to Michael Elsken.

Two of the estates in which Laughlin found funds subject to the levy had confirmed plans providing for payments to Michael Elsken. The IRS later agreed that the levy would not be effective against the estate of the third debtor, for which there was not yet a confirmed plan.

Laughlin filed a motion in the bankruptcy court to enforce the Bankruptcy Code's automatic stay. The bankruptcy court[2] denied Laughlin's motion. The district court affirmed the denial. Laughlin appeals, asking that we find that the IRS willfully violated the automatic stay and that we order reimbursement from the government for costs and attorney's fees.

## II.

The district court held that the IRS levy did not violate the automatic stay of section 362 and upheld the bankruptcy court's ruling that 26 U.S.C. § 7421(a), the Anti-Injunction Act of the Internal Revenue Code, barred the entry of an order requiring the IRS to provide more detail in the notice of levy or to file an adversary proceeding before filing a notice of levy.[3]

█ We agree with the bankruptcy court and the district court that the IRS has not violated the automatic stay in this case.[4] The debtors, estates, and creditors—those entities the automatic stay is designed to protect—are unaffected by the levy. *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985) (the "automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment"); *see also H & H Beverage Distrib. v. Department of Revenue of Pa.*, 850 F.2d 165, 166 (3rd Cir.), *cert. denied*, 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986); *In re Stringer*, 847 F.2d 549, 551 (9th Cir.1988); *Pursiful v. Eakin*, 814 F.2d 1501, 1504 (10th Cir.1987); 2 L. King, *Collier on Bankruptcy* ¶ 362.01, at 362–7 (15th ed. 1990). The IRS is simply levying on money each bankruptcy estate owes Michael Elsken, as determined and approved for payment by the bankruptcy court. The IRS levy no more interfered with the purposes of the automatic stay under these circumstances than it would have had the notice of levy been served upon the bank in which the estate checks were deposited had they been sent to and received by the Elskens in

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

2. The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

3. Section 7421(a) provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any Court by any person, whether or not such person is the person against whom such tax is assessed."

4. The bankruptcy and district courts found no violation of the automatic stay based on their view that funds held by a Chapter 13 trustee for distribution to creditors under a confirmed plan are vested in the debtor under 11 U.S.C. § 1327(b) and thus are no longer property of the estate subject to the automatic stay. Because we base our holding on a different ground, we do not consider or decide whether property remains in the bankruptcy estate after confirmation of a Chapter 13 plan.

due course. It is really the administrative burden created by the notice of levy to which the trustee objects. As indicated below, we, like the bankruptcy court, do not minimize the extent of that burden.

■ We turn, then, to the question whether the Anti–Injunction Act bars Laughlin's claim for relief from the levy.

Prior to the enactment of the current Bankruptcy Code, two circuits affirmed the right of the IRS to serve a notice of levy on a bankruptcy trustee in circumstances similar to Laughlin's. *In re Quakertown Shopping Center, Inc.*, 366 F.2d 95 (3d Cir.1966), concerned a notice of levy the IRS served on a debtor's receiver to attach a taxpayer-creditor's claim against the bankruptcy estate. The court found the levy valid and enforceable, reasoning that the United States became, in effect, the involuntary assignee of the creditor and that the levy did not invade the jurisdiction of the bankruptcy court or interfere with the administration of the estate. *Id.* at 98. *See also In re Meter Maid Indus., Inc.*, 462 F.2d 436 (5th Cir.1972) (adopting the reasoning of *Quakertown* on similar facts).

In *Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975), debtors who had already been discharged in bankruptcy sought to enjoin the IRS from collecting back taxes until the dischargeability of the tax debts was determined by the courts. The government had not filed proofs of claim during the course of the bankruptcy proceedings. We held that the Anti–Injunction Act did not bar the bankruptcy court from entering an order enjoining the government from collecting the taxes. We concluded that Congress' enactment of a complete scheme governing bankruptcy proceedings overrode the general policy represented by the Anti–Injunction Act. We based our conclusion on our belief that

> the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly

and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act.

*Id.* at 744.

In *A to Z Welding & Mfg. Co., Inc. v. United States*, 803 F.2d 932 (8th Cir.1986), we held that the Anti–Injunction Act prohibited a suit by a corporation seeking to enjoin the IRS from collecting a penalty against its officers and shareholders for taxes withheld from the corporation's employees' wages but not paid over to the government. We found *Bostwick* inapposite because the tax sought to be collected had been assessed against officers and shareholders of the corporation in their personal capacity and not from the debtor in bankruptcy, as in *Bostwick*. 803 F.2d at 933. On similar facts, other courts of appeals have also held that the Bankruptcy Code does not override the Anti–Injunction Act. *In re American Bicycle Assoc.*, 895 F.2d 1277 (9th Cir.1990); *In Matter of La-Salle Rolling Mills, Inc.*, 832 F.2d 390 (7th Cir.1987); *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986).

Finding no violation of the automatic stay, we conclude that the Anti–Injunction Act controls the outcome of this case. Congress has not provided a bankruptcy exception to the Anti–Injunction Act that would authorize a court to enjoin IRS collection efforts in these circumstances. Nor does Laughlin's case fit into the narrow confines of *Bostwick*. This is not a situation in which the debtors thought themselves discharged of a debt for which the IRS had not filed a proof of claim during the bankruptcy proceedings. The IRS is seeking only to collect directly from the trustee that which the debtors owe the taxpayer-creditor according to the terms and conditions of confirmed Chapter 13 plans. Thus, our concerns in *Bostwick* about rehabilitation of the debtor and the orderly administration of the bankruptcy laws do not come into play. Moreover, because Laughlin does not dispute the validity of the tax, this case does not fit within the exception to the Anti–Injunction Act recognized by the Supreme Court in *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984).

As the bankruptcy court recognized, the administrative burden of future levy notices that do not identify the property or even the debtors to which the levy applies is not a fanciful fear on Laughlin's part. Although it appears to us that the IRS could easily spare trustees the possibly enormous burden of sifting through hundreds or even thousands of cases, we have no basis here for dictating to the IRS the methods by which it may collect taxes. It is for Congress to impose upon the IRS the requirement of specifying the estates upon which the notice of levy is to apply or to create a bankruptcy exception to the Anti–Injunction Act.

Having found that the notice of levy did not violate the automatic stay provisions of section 362, we deny Laughlin's claim for costs and attorney's fees.

The district court's judgment is affirmed.

MAGILL, Circuit Judge, dissenting.

In holding that the IRS did not violate the automatic stay of 11 U.S.C. § 362, the majority disregards "the fundamental canon that statutory interpretation begins with the language of the statute itself." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, ― U.S. ―, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Section 362(a) provides that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the

estate." [5] The meaning of this language is plain: if the funds on which the IRS levied are property of the estate, then the IRS violated the automatic stay. Thus, as both the bankruptcy and district courts recognized, the critical issue in this case is whether funds held by a Chapter 13 trustee for distribution to creditors under a confirmed plan constitute property of the estate. The majority declines to even consider this issue, reasoning that the precise terms Congress used in § 362(a) are irrelevant because, in its view, the IRS levy does not interfere with the general purposes of the stay. It is not surprising that the majority cites no authority to support this radical departure from the recognized rules of statutory construction. [6] In a recent decision interpreting a different Bankruptcy Code section, the Supreme Court emphasized that "where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

Because the majority refuses to enforce § 362(a) according to its terms, I must respectfully dissent. I would hold that the IRS violated the automatic stay because the funds on which it levied are property of the estate. [7] I would further hold that the Anti–Injunction Act, 26 U.S.C. § 7421(a), does not bar the trustee's action to enforce the stay. [8]

---

**5.** The stay also applies to "any act to create, perfect, or enforce any lien against property of the estate." § 362(a)(4).

**6.** In each of the cases cited by the majority involving an alleged violation of the Bankruptcy Code's automatic stay, the court first looked to the pertinent language of § 362 in order to decide the issue. Indeed, the treatise cited by the majority states that "the precise wording of the stay and its exceptions should be emphasized." 2 L. King, Collier on Bankruptcy, ¶ 362.04, at 362–34 (15th ed. 1990). It notes further that "[t]he stay of section 362 is extremely broad in scope and, aside from the limited exceptions of subsection (b), should apply to almost any type of formal or informal action against the debtor or the property of the estate." *Id.* at 362–32.

**7.** The IRS argues that even if the funds are property of the estate, the levy constituted an action by a *governmental unit to enforce its* regulatory power and therefore falls under the exception to the automatic stay set forth in § 362(b)(4). The IRS fails to recognize that the § 362(b)(4) exception is expressly limited to those acts otherwise stayed by § 362(a)(1) and thus does not apply to the acts proscribed by § 362(a)(3), (a)(4). *See SEC v. First Fin. Group*, 645 F.2d 429, 437 (5th Cir. Unit A May 1981); *In re Ryan*, 15 B.R. 514, 519 (Bankr.D.Md.1981).

**8.** However, even if the IRS's violation of the stay was willful, we have no jurisdiction to grant the trustee's request for costs and attorney's fees under 11 U.S.C. § 362(h) because the federal government has not waived its sovereign immunity as to such relief. The only provision

## I. Property of the Estate

In *Resendez v. Lindquist*, 691 F.2d 397, 398–99 (8th Cir.1982), we held that undistributed funds in the possession of a Chapter 13 trustee after confirmation of the plan are property of the Chapter 13 estate. The trustee in *Resendez* was therefore required under 11 U.S.C. § 542(a) to turn over such funds to the Chapter 7 trustee when the debtors converted their case to Chapter 7. *Id.* at 398; *see also* Bankruptcy Rule 1019(5) (1987).[9] In addition, because the debtors had voluntarily paid the funds to the Chapter 13 trustee, we affirmed the denial of their claim for exemption of the funds from the Chapter 7 estate. *Resendez*, 691 F.2d at 399. The only other circuit to address the issue has also concluded that undistributed funds held by a Chapter 13 trustee postconfirmation are property of the estate. *See In re Nash*, 765 F.2d 1410, 1412, 1414 (9th Cir.1985).

Our determination that the undistributed postconfirmation funds in *Resendez* were property of the Chapter 13 estate was in no way dependent upon the debtors' decision to convert their case. There is certainly nothing in the Bankruptcy Code which makes that determination in an ongoing Chapter 13 case contingent upon whether the debtor will or will not later choose to convert the case. Thus, because there is no principled basis on which to distinguish the holding in *Resendez*, this panel is bound to conclude that the funds on which the IRS levied are property of the estate.[10]

Even if *Resendez* did not constitute binding authority in this case, I would still conclude that the funds at issue are property of the estate. 11 U.S.C. § 1306(a) provides that property of the Chapter 13 estate includes not only all of the debtor's property as of the time of petition, but also all property and earnings the debtor subsequently acquires prior to the time the case is closed, dismissed, or converted to another chapter. Section 1306(b) further provides that the debtor shall remain in possession of all property of the estate except as provided in a confirmed plan or confirmation order. On the other hand, 11 U.S.C. § 1327(b) states that the confirmation of a plan vests all of the property of the estate in the debtor except as otherwise

that could constitute a waiver in this case is 11 U.S.C. § 106(c). Based on the Supreme Court's decision in *Hoffman v. Connecticut Dep't of Income Maintenance*, — U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), we have held that § 106(c) does not waive the federal government's sovereign immunity with respect to monetary awards. *Small Business Admin. v. Rinehart*, 887 F.2d 165, 169–70 (8th Cir.1989). Contrary to the trustee's argument, the IRS may raise the issue of sovereign immunity for the first time on appeal. *Dewitt Bank & Trust Co. v. United States*, 878 F.2d 246, 246 (8th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990); *United States v. Johnson*, 853 F.2d 619, 622 n. 7 (8th Cir.1988).

**9.** Some bankruptcy courts have concluded that 11 U.S.C. § 1326(a)(2), added to the Bankruptcy Code in 1984, now provides that undistributed funds held by a Chapter 13 trustee postconfirmation must be distributed to creditors in accordance with the plan upon conversion of the case. *See In re Milledge*, 94 B.R. 218, 219–20 (Bankr.M.D.Ga.1988); *In re Waugh*, 82 B.R. 394, 400 (Bankr.W.D.Pa.1988); *In re Lennon*, 65 B.R. 130, 137–39 (Bankr.N.D.Ga.1986). On its face, § 1326(a)(2) appears to apply only to funds that the trustee received prior to confirmation. More importantly, it is questionable whether this subsection mandates that the trustee continue distributing payments to creditors even after

the debtor has converted the case. In any event, even if § 1326(a)(2) partially supersedes *Resendez* by requiring that undistributed postconfirmation funds be turned over directly to plan creditors, it certainly has no effect on *Resendez*'s holding that such funds are property of the estate.

**10.** *In re Lindberg*, 735 F.2d 1087 (8th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984), does not permit us to reach a contrary conclusion. *Lindberg* simply held that in a case converted from Chapter 13 to Chapter 7, the date of conversion controls exemption eligibility. *Id.* at 1088. Although the *Lindberg* panel suggested in dictum that confirmation terminates the Chapter 13 estate unless the plan provides otherwise, *id.* at 1089, it did not even discuss *Resendez*, let alone purport to overrule its holding that undistributed funds in the possession of a Chapter 13 trustee postconfirmation are property of the Chapter 13 estate. This holding can, of course, only be overruled by the court en banc. *See, e.g., Brown v. First Nat'l Bank*, 844 F.2d 580, 582 (8th Cir.), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 20, 101 L.Ed.2d 971 (1988). Furthermore, we have stressed that "[t]he doctrine of *stare decisis*, weighty in any context, is especially so in matters of statutory construction." *Cottrell v. Commissioner*, 628 F.2d 1127, 1131 (8th Cir.1980) (en banc).

provided in the plan or confirmation order. The apparent tension between § 1327(b) and § 1306(a)'s definition of the estate has led to a split in the bankruptcy courts on the question of whether the Chapter 13 estate continues to exist after confirmation of the plan. Some bankruptcy court decisions have held that unless the plan provides otherwise, confirmation vests all property of the Chapter 13 estate in the debtor, terminating the estate at that point. *See, e.g., In re Dickey,* 64 B.R. 3, 4 (Bankr. E.D. Va.1985); *In re Mason,* 45 B.R. 498, 500–01 (Bankr.D.Or.1984), *aff'd,* 51 B.R. 548 (D.Or.1985). Others have held that property necessary for the execution of the plan's provisions remains property of the Chapter 13 estate and does not vest in the debtor. *See, e.g., In re Root,* 61 B.R. 984, 985 (Bankr.D.Colo.1986); *In re Adams,* 12 B.R. 540, 541–42 (Bankr.D.Utah 1981); *see also* 2 L. King, *supra* note 6, ¶ 1327.01 at 1327–5 (§ 1327(b) preserves "to the debtor ownership, as well as possession, of all property, whether acquired before or during the chapter 13 case, except as otherwise required to effectuate the confirmed plan") (footnotes omitted).[11] I find the latter line of cases more persuasive.

Besides § 1306(a), several other Bankruptcy Code sections indicate that the Chapter 13 estate remains in existence after confirmation of the debtor's plan. 11 U.S.C. § 704(9), made applicable to Chapter 13 by 11 U.S.C. § 1302(b)(1), requires the trustee to make a final report and file a final account of "the administration of the estate." 11 U.S.C. § 347(a) provides that ninety days after the final distribution in a case under Chapter 13, the trustee must stop payment on any check remaining unpaid and remit "any remaining property of the estate" to the court for disposal pursuant to Chapter 129 of Title 28. In addition, 11 U.S.C. § 345 authorizes the Chapter 13 trustee to deposit or invest "money of the estate," subject to specified restrictions that protect plan creditors from loss. If undistributed postconfirmation funds were not property of the estate, then the Chapter 13 trustee would not be bound by these restrictions when depositing or investing such funds pending distribution to creditors. Finally, 11 U.S.C. § 349(b)(3) states that unless the court orders otherwise for cause, dismissal of a Chapter 13 case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." Based on this provision, the Ninth Circuit has held that a Chapter 13 trustee must return undistributed postconfirmation funds to the debtor when the case is dismissed. *See Nash,* 765 F.2d at 1414.

Section 362(a)'s automatic stay of acts against property of the estate continues until such property is no longer property of the estate, § 362(c)(1), and bars any attempt to proceed against property of the estate regardless of whether the claim arose pre- or postpetition. The stay of acts against the debtor or property of the debtor continues until the case is closed or dismissed, or a discharge is granted or denied. § 362(c)(2). However, it does not prohibit acts to enforce claims that arose postpetition. § 362(a). Thus, if the Chapter 13 estate ceases to exist upon confirmation and all property of the estate becomes property of the debtor, then the automatic stay would not protect property essential to successful completion of a confirmed plan from postpetition claims. Nor would it prevent postconfirmation actions against that property by the IRS or other entities to enforce claims against plan creditors. Such a result is contrary to debtor rehabilitation, a major policy goal of Chapter 13. *See In re Schewe,* 94 B.R. 938, 945 (Bankr. W.D.Mich.1989). As one bankruptcy court has put it, "a debtor who is making his best financial effort to pay all of his creditors equally under a Chapter 13 Plan should not have his scarce resources and 'property of the estate' invaded and the Plan doomed to failure because of a claim from an upstart post-petition creditor." *In re Clarke,* 71 B.R. 747, 750 (Bankr.E.D.Pa.1987). Al-

---

**11.** *In re Aneiro,* 72 B.R. 424, 429–30 (Bankr.S.D. Cal.1987), reached a similar result by holding that property which revests in the debtor at confirmation remains property of the estate, with the debtor's ownership rights limited at least to the extent that the property is committed to successful completion of the plan.

though there are situations in which it may be difficult to identify precisely the property that is essential for execution of the plan, *see In re Petruccelli,* 113 B.R. 5, 16 (Bankr.S.D.Cal.1990), it is clear that such property necessarily includes funds submitted by the debtor to the trustee for distribution to creditors under the plan. *See* 11 U.S.C. § 1322(a)(1) (a Chapter 13 plan must "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan"); *In re McCray,* 62 B.R. 11, 12 (Bankr.D. Colo.1986) (after confirmation, "plan payments" remain property of the estate because they are "needed for execution of the plan").

Given that undistributed funds held by a Chapter 13 trustee postconfirmation are property of the estate, the plain language of § 362(a) requires a finding that the IRS violated the automatic stay. Our sole function is to enforce this language, unless we are presented with one of the " 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' " *Ron Pair Enterprises,* 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Thus, contrary to the majority's view, the trustee need not show that the IRS levy interferes with the general purposes of the stay to prevail in this case. Rather, in order to justify its refusal to enforce the plain language of § 362(a), the majority must point to "clear evidence that reading the language literally would thwart the obvious purposes" of the automatic stay. *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989).

The majority identifies absolutely no evidence that one of the obvious purposes of § 362(a) is to make it easier for entities to enforce claims against plan creditors by permitting them to proceed against property of the estate without first obtaining relief from the stay. There is, on the other hand, evidence in the Code that postconfirmation application of § 362(a) to such ac-

tions against estate funds held by the trustee would protect the interests of both the debtor and other creditors. At any time after confirmation, a Chapter 13 debtor has an absolute right to have the case dismissed, 11 U.S.C. § 1307(b), to convert the case to Chapter 7, § 1307(a), or to request modification of the plan, 11 U.S.C. § 1329(a). Thus, any one of these actions could be taken during a period in which the trustee is holding estate funds postconfirmation pending their later distribution to creditors in accordance with the plan. If the case is dismissed during this period, the trustee must return the estate funds to the debtor. *Nash,* 765 F.2d at 1414. If the case is instead converted to Chapter 7, the funds become part of the Chapter 7 estate, *Resendez,* 691 F.2d at 398–99, which may very well result in a different distribution of those funds among creditors. A different apportionment of the funds may also result from modification of the plan to reduce the level of payments to a particular class of creditors, § 1329(a)(1), or from modification to alter the amount of the distribution to a creditor who has received a payment outside of the plan, § 1329(a)(3). Moreover, if the IRS is correct in contending that the circumstances of this particular case strongly favor enforcement of the levy, then there is no reason why it could not simply have requested and obtained relief from the stay under the provisions of § 362(d)–(g).

In sum, because there is no clear evidence that literal application of the plain and precise language of § 362(a) would thwart the obvious purposes of that section, I would hold that the IRS violated the automatic stay.

## II. Anti–Injunction Act

Section 362(a) states that the automatic stay applies to all "entities." The definition of the term "entity" includes a "governmental unit," which in turn is defined as including a "department, agency, or instrumentality of the United States." 11 U.S.C. § 101(14), (26). Some of the exceptions to the stay listed in § 362(b) apply only to governmental units. Of particular note is

§ 362(b)(9), which excepts "the issuance to the debtor by a governmental unit of a notice of tax deficiency."

These statutory provisions leave no doubt that "[t]he IRS is subject to the automatic stay when engaged in tax collection activities." *In re Loughnane*, 28 B.R. 940, 941 (Bankr.D.Colo.1983). There are numerous decisions finding that the IRS violated the stay. *See, e.g., United States v. Reynolds*, 764 F.2d 1004 (4th Cir.1985); *United States v. Norton*, 717 F.2d 767 (3d Cir.1983); *In re Lile*, 103 B.R. 830 (Bankr. S.D.Tex.1989); *In re Carlsen*, 63 B.R. 706 (Bankr.C.D.Cal.1986). Indeed, in some cases the IRS has conceded that it violated the stay. *See In re Academy Answering Serv., Inc.*, 100 B.R. 327, 329 (N.D.Ohio 1989); *In re Santa Rosa Truck Stop, Inc.*, 74 B.R. 641, 642 (Bankr.N.D.Fla.1987); *see also In re Aurora Cord & Cable Co., Inc.*, 2 B.R. 342, 344 (Bankr.N.D.Ill.1980) (noting that IRS "does not contest that it is subject to the automatic stay"). By contrast, there is apparently not a single reported case in which the IRS argued or the court held that the Anti–Injunction Act barred an action to enforce the automatic stay. In their decisions holding that the Bankruptcy Code contains no general exception to the Anti–Injunction Act, both the Fourth and Seventh Circuits intimated that the Act does not apply to a suit against the IRS to prevent or remedy a violation of the Code's automatic stay. *In re Heritage Village Church & Missionary Fellowship*, 851 F.2d 104, 105 (4th Cir.1988) (per curiam); *In re LaSalle Rolling Mills, Inc.*, 832 F.2d 390, 394 (7th Cir.1987). Other decisions holding to the same effect have expressly indicated that the protection afforded by the automatic stay is not limited by the Act. *In re Heritage Village Church & Missionary Fellowship*, 87 B.R. 401, 403–05 (D.S.C.), *aff'd*, 851 F.2d 104 (4th Cir. 1988); *Cambridge Machined Prods. Corp. v. United States*, 58 B.R. 22, 25 (Bankr.D. Mass.1985); *In re Idaho Agriquipment, Inc.*, 54 B.R. 114, 115 (Bankr.D.Idaho 1985); *In re Franklin Press, Inc.*, 46 B.R. 523, 525 (Bankr.S.D.Fla.1985); *In re O.H. Lewis Co., Inc.*, 40 B.R. 531, 533–34 (Bankr.D.N.H.1984).

Thus, the statutory language and case law make it abundantly clear that the Code's automatic stay provisions supersede the Act. In enacting § 362, Congress obviously intended that the courts would have jurisdiction to enforce the stay against the IRS. To conclude otherwise would effectively render the stay's express applicability to the IRS meaningless. Accordingly, I would hold that the trustee's action to enforce the automatic stay is not barred by the Anti–Injunction Act.

For the reasons set forth above, I would reverse the district court's judgment.