In re **BLUE COAL CORP.**, Bankrupt.

**Bankruptcy No. 76–1311.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Jan. 13, 1993.

John H. Doran, Wilkes–Barre, PA, Trustee.

D. Alan Harris, Chicago, IL, for Com. of Pa.

Harry Giacometti, U.S. Dept. of Justice, Tax Dept., Washington, DC, for U.S.

Charles Shea, Wilkes–Barre, PA, for AHWF.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

This matter comes before the Court on the Joint Motion for partial summary judgment filed by the Trustee in Bankruptcy, the United States of America, and the Commonwealth of Pennsylvania (hereinafter "Trustee"). The Motion is filed against the interest claim of the Anthracite Health and Welfare Fund (hereinafter "Fund") with regard to the Fund's contention that it is entitled to payment of post-petition interest on account of its alleged judgment lien against the real estate of the bankrupt.

Inasmuch as this case was filed under the provisions of the Act of 1898, that Act, rather than the Bankruptcy Code of 1979, governs the resolution of this issue.

The issue may be adequately stated as follows: Is the Fund, as a judgment lien creditor, precluded, as a matter of law, from an allowance of post-petition interest on its alleged oversecured claim under the provisions of the Bankruptcy Act of 1898.

The fact that this matter is now before this Court on a partial motion for summary judgment means that this Court must determine whether the Trustee is entitled to judgment as a matter of law on that specific issue. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3rd Cir.1981).

It is the contention of the Trustee that § 63(a)(1) of the Bankruptcy Act prohibits the collection of post-petition interest on a pre-petition judgment lien.

Section 63(a)(1) reads as follows:

**§ 63. Debts Which May be Proved.** a. Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have

been recoverable at that date or with a rebate or interest upon such as were not then payable and did not bear interest;

. . .

While acknowledging that the general rule under the Act was that post-petition interest did not accrue, several judicial exceptions were fashioned.

It is important to initiate our discussion with a short historical analysis of the basis for that general rule. That analysis need not be restated but is set forth in the following quotation from a United States Supreme Court case that adequately addressed the issue and is provided herein, with footnote, as follows:

> More than forty years ago Mr. Justice Holmes wrote for this Court that the rule stopping interest at bankruptcy had then been followed for more than a century and a half. He said the rule was not a matter of legislative command or statutory construction but, rather, a fundamental principle of the English bankruptcy [7] system which we copied. *Sexton v. Dreyfus*, 219 U.S. 339, 344 [31 S.Ct. 256, 257, 55 L.Ed. 244].

---

[7] In England the practice was well established, 2 Blackstone, Commentaries *488; *Bromley v. Goodere*, 1 Atk. 75; *Ex parte Bennet*, 2 Atk. 527; and applied to mortgages as well as unsecured debts, *Ex parte Badger*, 4 Ves.Jr. 165; *Ex parte Ramsbottom*, 2 Mont. & Ayr. 79; *Ex parte Penfold*, 4 De G. & Sm. 282; *Ex parte Lubbock*, 9 Jur. (N.S.) 854; *In re Savin*, L.R. 7 Ch. 760, 764; *Ex parte Bath*, 22 Ch. Div. 450, 454; *Quartermaine's Case*, [1892] 1 Ch. 639; *In re Bonacino*, 1 Manson 59. Two exceptions were recognized; if the alleged "bankrupt" proved solvent, creditors received post-bankruptcy interest before any surplus reverted to the debtor, *Bromley v. Goodere*, 1 Atk. 75; *Ex parte Mills*, 2 Ves.Jr. 295; *Ex parte Clarke*, 4 Ves.Jr. 676; and if securities held by a creditor as collateral produced interest or dividends during bankruptcy such amounts were applied to post-bankruptcy interest, *Ex parte Ramsbottom*, 2 Mont. & Ayr. 79; *Ex parte Penfold*, 4 De G. & Sm. 282; *Quartermaine's Case*, [1892] 1 Ch. 639. These exceptions have been carried over into our system. See *American Iron Co. v. Seaboard Air Line*, 233 U.S. 261, 267 [34 S.Ct. 502, 504, 58 L.Ed. 949]; *Sexton v. Dreyfus*, 219 U.S. 339, 346 [31 S.Ct. 256, 258, 55 L.Ed. 244].

*New York v. Saper*, 336 U.S. 328, 330, 69 S.Ct. 554, 555, 93 L.Ed. 710 (1949).

Along with the two exceptions noted in *Sexton v. Dreyfus*, the United States Supreme Court recognized an exception to the no-interest rule that would also apply to interest on a mortgage debt where the collateral was sufficient to pay that interest. *Coder v. Arts*, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1909). "Simple interest on secured claims accruing after the petition was filed was denied unless the security was worth more than the sum of principle and interest due." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946).

The first exception dealing with a solvent estate is not now at issue since we know neither the liquidated value of assets nor has the claims resolution process been concluded. Any consideration of this exception would thus be premature.

The second exception is inapplicable since the collateral is not represented by interest-bearing securities. A more detailed discussion of the third exception will follow.

Assuming that these three exceptions compliment the general rule, a secondary issue becomes whether the Fund, whose lien is alleged to be "nonconsensual", should be permitted to collect the same post-petition interest that would accrue to a "consensual" lien.

■ Initially, the Fund challenges the allegation that their lien is a "nonconsensual" lien. They assert that their debt arose from the terms of a settlement agreement executed by each of the parties providing for the payment of interest on the claim and further that the lien of any judgment entered by reason of that agreement would also bear interest at the rate of six percent (6%) per annum.

Although it is helpful in determining the equities of the situation to appreciate that the bankrupt in fact agreed to the payment of interest to the Fund, it is questionable whether this agreement elevates that *lien* of the Fund to "consensual" status. The bankrupt agreed that the debt would accrue interest—the bankrupt did not necessarily agree that the *lien* would accrue interest.

For purposes of this opinion this Court will adopt the definitions of consensual and nonconsensual liens set forth in the case of *In re Dan–Ver Enterprises, Inc.,* 67 B.R. 951 (W.D.Pa.1986).

A consensual secured claim arises from a voluntarily executed agreement between debtor and creditor wherein the two parties bargain with respect to a specific security, knowing the creditor may sell the security in satisfaction of an overdue claim. A nonconsensual secured claim, on the other hand, arises from a judicial or statutory lien; no bargaining takes place with respect to the security upon which the lien is imposed. See *In re Boston and Maine Corp.,* 719 F.2d 493 (9 C.B.C. 2nd 1377) (1st Cir.1983) Sapps' Secured Claim, *although arising from a voluntary agreement of guarantee and suretyship,* qualifies as nonconsensual because the real estate and its proceeds upon which the Sapps' lien attached, was not voluntarily provided as such security by Dan–Ver. (Emphasis ours). *In re Dan–Ver Enterprises, Inc.,* 67 B.R. 951, 953 (W.D.Pa.1986).

In holding that the lien of the Fund is a nonconsensual lien, we must then inquire as to whether the cases decided under the Act of 1898 "excepted" nonconsensual liens from the third exception to the no interest rule, i.e. interest accrues on liens to the extent of the value of collateral.

This Court has extensively reviewed the authorities and has concluded that at least six circuits have agreed that tax liens (nonconsensual liens) do not accrue interest despite the fact that the collateral was worth sufficient sums to allow the payment of interest out of the collateral. *In re Boston & Maine Corporation,* 719 F.2d 493 (1st Cir.1983) Cert. Denied 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). *United States v. Harrington,* 269 F.2d 719 (4th Cir.1959). *In re Ron Pair Enterprises,* 828 F.2d 367 (6th Cir.1987). (Code case interpreting pre-code law), *In re Kerber Packing Company,* 276 F.2d 245 (7th Cir. 1960), *U.S. v. Bass,* 271 F.2d 129 (9th Cir. 1959), *U.S. v. Mighell,* 273 F.2d 682 (10th Cir.1959).

The list of Circuit Court cases that have considered the interest issue relative to tax liens is impressive. Nevertheless, our Third Circuit has appeared to have addressed the oversecured interest issue only in *In re Magnus Harmonica Corporation,* 262 F.2d 515 (3rd Cir.1959). In that case, the Third Circuit acknowledged that interest is not recoverable after a reorganization proceeding has been instituted, except when a creditor is secured above the amount of its principle debt.

No reference is made by the Third Circuit that the secured interest is treated differently if consensual or nonconsensual.

Nevertheless, the Third Circuit does make reference to a critical consideration that this Court must entertain.

"A Bankruptcy Court is one with equity powers and has a measure of discretion in their exercise". Citing *Vanston* supra. Id. at Page 518.

As earlier indicated, *Vanston* supports the proposition that simple interest on secured claims accruing after the petition was filed would be denied unless the security was worth more than the sum of principle and interest due.

More importantly, *Vanston* confirmed that "... the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." *Vanston* supra, 329 U.S. at 165, 67 S.Ct. at 241.

"... bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles". Id. at Page 163, 67 S.Ct. at 240.

Once we invoke equitable principles, this Court is compelled to ask itself "Why is there a distinction between consensual liens and nonconsensual liens?".

Even though the United States Supreme Court case of *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) was a case

decided under the Bankruptcy Code of 1978, its discussion of the issues before us is invaluable.

The *Ron Pair* Court spent considerable time discussing pre-Code law, the general prohibition against the payment of interest and the three exceptions to that prohibition. When addressing the so-called exception to the exception, i.e. interest when payable to an oversecured claim except if it was a nonconsensual lien, the Supreme Court stated "the fact that this Court never clearly has acknowledged or relied upon this limitation on the oversecured claim exception counsels us against concluding that the limitation was well recognized. Also, arguing against considering this limitation a clear rule is the fact that all the cases that limited this exception were tax-lien cases. Each gave weight to *New York v. Saper*, supra, where this Court had ruled that post-petition interest was not available on unsecured tax claims, and reasoned that the broad language of that case denied it for all tax claims. (Citations omitted). The rule articulated in these cases never was extended to other forms of nonconsensual liens". *United States v. Ron Pair Enterprises, Inc.*, Id. at pages 247–248, 109 S.Ct. at pages 1034.

In attempting to analyze why there was a distinction between consensual liens and nonconsensual liens with regard to previous Act cases, the Supreme Court reasoned that "... nonconsensual liens were often fixed to the entirety of the debtor's property, while consensual liens usually were fixed with particular items of property". Id. at page 247, Footnote 9, 109 S.Ct. at page 1034, footnote 9. The Supreme Court disposed of that argument by suggesting that modern commercial lending practices have changed and it is not unusual for commercial lenders to obtain a lien on almost all of the debtor's property. Id. at page 247, Footnote 9, 109 S.Ct. at page 1034, Footnote 9.

On the other hand, *Ron Pair* acknowledged that "the payment of post-petition interest is arguably somewhat in tension with the desirability of paying all creditors as uniformly as practical". Id. at Pages 245–246, 109 S.Ct. at page 1033.

Once this Court recognizes that the allowance of interest is one within the equitable authority of this Court and not directed by legislative fiat then the resolution of this pending Motion for Partial Summary Judgment becomes quite simple.

An analysis of the pleadings in this case makes clear that there are multiple issues involved including a request to subordinate the claim of the Fund to other creditors for equitable reasons.

■ Because we conclude that this Court has the equitable power to grant an oversecured claimant, including a judgment lien claimant, interest on a claim up to the value of its security, that conclusion can only result in the denial of the Motion for Partial Summary Judgment filed by the Trustee. This obviously cannot be dispositive of the post-petition interest issue since testimony has not concluded on the original Motion of the Fund for Determination of the Value of its Secured Claim, which testimony may very well impact on the allowance of post-petition interest.