See also 210 B.R. 249.

**In re METROPOLITAN METALS, INC., Debtor.**

**Joseph F. and Caroline ENOS, Plaintiffs,**

**v.**

**Charles J. DeHART, III, Trustee in Bankruptcy for Metropolitan Metals, Inc., Defendant,**

**and**

**United States of America, Defendant.**

**Bankruptcy No. 79–318.**
**Adversary No. 5–95–0331A.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Nov. 20, 1997.

Hans A. Stoeckler, No. Dighton, MA, for Plaintiffs.

Stephen A. Moore, Edward Rothman, Harrisburg, PA, for Defendant.

Charles DeHart, III, Hummelstown, PA, trustee.

Angelo Frattarelli, U.S. Dept. of Justice, Washington, DC, for U.S. and I.R.S.

## *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

A host of matters are currently pending before this Court in the above captioned bankruptcy. Among those matters are the following:

1. Motion of Claimants, Joseph F. and Caroline Enos, for the Removal of Charles J. DeHart, III, as Trustee and the Appointment of a Special Trustee (Doc. # 1028).

2. Motion of Joseph F. and Caroline Enos for Attachment of Trustee's Bond (Doc. # 1239).

3. Joseph F. and Caroline Enos v. Charles J. DeHart, III, Trustee, and United States of America, Adversary Proceeding number 5–95–331 (Complaint to Recover Money or Property).

4. Claims litigation concerning the Internal Revenue Service and the Claims of Joseph F. and Caroline Enos.

The parties spent significant time in attempting to mediate their differences. While not successful, the principal litigants, Attorney Charles DeHart (Trustee), Joseph and Caroline Enos (Enoses), and the Internal Revenue Service have agreed to place five specific issues before the Court that are materially relevant to the further determination of the rights of the parties. These issues are particularly important regarding the aforestated matters. They can be articulated as follows:

Whether Claim 134 of the Internal Revenue Service has, heretofore, been found by the Court to be a valid claim?

Whether any part of Claim 134 has, heretofore, been found to be invalid?

Whether Claim 134, on its face, contains a demand for interest?

Whether the Court can determine, from a review of Claim 134, the exact amount of interest, if any, which accrues?

Whether the Court can determine the liability, if any, of each party with respect to that interest?

(Transcript of 08/18/97 at 21–22.)

In furtherance of an expedited disposition of this matter, the parties agreed to utilize as a factual background, the Stipulation of Facts filed to docket number 496 on October 3, 1984. That Stipulation has been reproduced in *In re Metropolitan Metals, Inc.*, 210 B.R. 249 (Bankr.M.D.Pa.1997) and need not be repeated.

The parties first ask "Whether claim # 134 was found by the Court to be either a valid or an invalid claim?"

My attention is called to the opinion rendered in *In re Metropolitan Metals*, 50 B.R. 685 (Bankr.M.D.Pa.1985), *affirmed* No. 85–1119 slip op. (M.D.Pa. Aug. 4, 1986). Enoses claim that Judge Gibbons' opinion effected an allowance of claim 134. That decision, and the context in which it was rendered must, therefore, be examined. The procedural history of that litigation as set forth by Judge Gibbons is as follows:

The plaintiff, Charles J. DeHart, III, Trustee for Metropolitan Metals, Inc.,

(Metropolitan) commenced this proceeding requesting an order be entered against the United States of America through the Department of Internal Revenue Service (IRS) to compel the IRS to pursue assets of Joseph F. Enos and Caroline Enos to satisfy tax liabilities of the Enoses to the IRS before proceeding against assets of the debtors' estate ...

On December 6, 1983 the Trustee filed a complaint against the United States, acting through the Internal Revenue Service. The IRS filed an answer on January 5, 1984 raising, inter alia, a 12(b)(6) defense. On October 3, 1984, the parties filed a Stipulation of Facts requesting that this Court rely on that Stipulation to make a proper determination. On November 6, 1984, Bankruptcy Judge Robert Woodside from the Harrisburg Division of the Middle District of Pennsylvania, through a Memorandum recused himself from making a determination in this proceeding. Shortly thereafter, the Trustee and the IRS filed briefs-in support and in opposition to the complaint. The IRS also filed a Motion to Dismiss or for Summary Judgment and a Brief in Support.

*In re Metropolitan Metals,* 50 B.R. 685, 685–6 (Bankr.M.D.Pa.1985).

Paragraph 15 of the Stipulation filed by the parties recites that they have stipulated solely for the

> purpose of resolving the issue of whether the United States of America is entitled to share in the distribution of the proceeds generated from the liquidation of the assets of the bankrupt based on its priority claim under § 64(a)(5) of the Bankruptcy Act or whether the United States of America can first be legally compelled to attempt to collect its claim from assets of Joseph F. Enos and Caroline Enos, his wife....

*Id.* at 686

The court held the Internal Revenue Service could not be compelled to "first seek satisfaction of its tax claim against the assets of Enos before proceeding to the assets of the estate." *Id.* at 687. In so holding, the court observed that "neither party has questioned the *sufficiency* nor the legality of the

levy by the IRS on Metropolitan accounts receivable and, therefore, on the record, we are dealing with a perfected levy upon certain accounts receivable owned by Metropolitan." *Id.* at 687 (emphasis ours).

It is the Enoses' contention that the court's opinion effectively "allowed" claim 134 thus upholding its validity. More importantly, the Enoses have focused on the court's use of the term *sufficiency* to quite perceptively latch on to the following interesting defensive argument.

The ability of the IRS to issue successive seizures is governed by 26 U.S.C. § 6331(c) which states:

> (c) Successive seizures.—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

In reading this statute, the Enoses conclude that the Internal Revenue Service is only authorized to pursue the taxpayer if its original levy was "not sufficient to satisfy the claim." The receivable due the Enoses from Metropolitan as of 1978 was $300,000. (Stipulation of Facts 10/3/84 ¶ 6.) The Internal Revenue Service levy on that receivable was in the amount of $310,333.52. (Stipulation of Facts 10/3/84 ¶ 5.) By reason of payments made after the levy, the obligation to the Internal Revenue Service was reduced to $232,427.35 at the time of the filing of their proof of claim on March 2, 1981. (Stipulation of Facts 10/3/84 ¶ 7 and 9.) Ergo, Enoses argue, the receivable was more than enough to cover the balance due on the tax levy. When Judge Gibbons, in 50 B.R. 685, found that "neither party has questioned the sufficiency nor the legality of the levy by the IRS on Metropolitan accounts receivable," Enoses' argument was confirmed. Since the levy was *sufficient,* the Internal Revenue Service can no longer pursue the taxpayer as they

had, and the Internal Revenue Service activity against the Enoses after the Metropolitan levy should be reversed.

Whether this position is correct depends on our analysis of Judge Gibbons' opinion in light of that existing record and applicable law.

■ In *Coffin v. Malvern Federal Savings Bank*, the Third Circuit cautioned the bankruptcy court not to issue "advisory opinions" relative to matters not pending before it. *Coffin v. Malvern Federal Savings Bank*, 90 F.3d 851 (3rd Cir.1996). In opining that such rulings are not binding on the parties with regard to future proceedings, the Third Circuit explicitly concluded that findings, not necessary to a decision, are mere dictum and do not give rise to either res judicata or collateral estoppel. *Id.* at 853. In a similar vein, the law of the case doctrine, a rule of practice that discourages relitigation of legal issues decided in earlier proceedings within the same case, also only applies to issues "decided explicitly, as well as by necessary implication." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n. 3 (11th Cir.1990).

■ A review of the pleadings necessarily "implicated" by Judge Gibbons' opinion in 50 B.R. 685, i.e., the complaint (Doc. # 468), the answer (Doc. # 476), and the motion for summary judgment (Doc. # 511), confirms to this judge that the validity of claim 134 was *not* at issue. Although the parties in paragraph 15 of their stipulation of October 3, 1984, agreed that such stipulation was for the sole "purpose of resolving the issue of whether the United States of America is entitled to share in the distribution of the proceeds generated from the liquidation of the assets of the bankrupt based on its priority claim under § 64(a)(5) of the Bankruptcy Act or whether the United States of America can first be legally compelled to attempt to collect its claim from assets of Joseph F. Enos and Caroline Enos, his wife....", the parties cannot confer jurisdiction over this legal issue by consent. *Coffin v. Malvern Federal Savings Bank*, 90 F.3d 851, 854 (3rd Cir. 1996). There must be an actual controversy. Declaratory judgments can be issued only when there is "an actual controversy." 28 U.S.C. § 2201.

The specific issues before the court in 50 B.R. 685 were whether the Internal Revenue Service could be compelled to pursue the assets of the Enoses before proceeding against the assets of Metropolitan and whether Metropolitan could be subrogated to the rights the Internal Revenue Service has against the Enoses. I view a determination of the validity of claim 134 as not being essential to an adjudication of either issue and, therefore, that issue can still be litigated.

Perhaps, even more significantly, I conclude that the use of the term "sufficiency" in Judge Gibbons' opinion had nothing to do with the financial adequacy of the Internal Revenue Service levy. The pleadings never requested such a finding and such an observation was neither essential nor relevant to the existing inquiry. When reviewed in the context of the then-existing litigation environment, I find that Judge Gibbons' reference to "sufficiency" merely reflected the fact that the parties were not then contesting the validity of the existing levy. Nothing more. Claim 134 was neither found valid nor invalid.

The next issue confronting the Court is presented as follows: "Whether claim 134 contains a demand for interest?"

Initially, I note that paragraph 3 of the preprinted claim form for Internal Revenue Taxes, Form 4491 (Rev. 10–78), has been altered to reflect that the claim advanced against the Bankrupt was not for "taxes" but rather for "a debt."

Paragraph 3.B of claim 134 of the IRS asserts a priority claim under § 64a(5) and 31 U.S.C. § 191 in the amount of $232,427.35. The preprinted portion of that paragraph in the proof of claim form provides space to respond to the following: "Post-petition interest to the date of this statement* ... $_____." The asterisk(*) refers the reader to the bottom portion of the form which reads:

* Both post petition interest and prepetition and post petition penalties are stated for information purposes only. They are not claimable in this proceeding unless the

taxpayer is solvent. They will be collectible from after-acquired property if the liabilities are not discharged.

Paragraph 6 of the claim states, "Dollar amount per day at which interest will accrue after date of this statement ... $45.55."

■ In response to the question as to whether claim 134 includes a claim for interest, the Court acknowledges that it does, but views this of little import. Generally speaking, a debtor *should pay interest* up to the day of payment. Interest is merely suspended where the debtor is unable to pay principal and interest accruing prior to bankruptcy. *Nicholas v. United States*, 384 U.S. 678, 682, 86 S.Ct. 1674, 1678, 16 L.Ed.2d 853 n. 9 (1966), 3A James William Moore, Collier on Bankruptcy, ¶ 63.16 at 1859 (14th ed.1975). (The accrual of postpetition interest is suspended subject to reinstatement. *In re Norcor Mfg. Co.*, 36 F.Supp. 978 (E.D.Wis.1941)). Where permitted, no separate request for interest is required or desired. To hold otherwise would invite an endless stream of amended claims.

■ With regard to claims filed under the Bankruptcy Act of 1898, it has generally been acknowledged that post-petition interest does not accrue. *Nicholas v. United States*, 384 U.S. 678, 682, 86 S.Ct. 1674, 1678, 16 L.Ed.2d 853 (1966). See also 2 James M. Henderson, *Remington on Bankruptcy* §§ 726–727 at 150 (1956). In *In re Blue Coal Corp.*, I identified three circumstances where post-petition interest has been allowed. Those occasions are (1)· where the estate proves to be solvent; (2) where the collateral of the creditor is interest-bearing or dividend producing; and (3) where the creditor is oversecured, i.e., the value of the collateral is sufficient to bear the expense of the postpetition interest. *In re Blue Coal Corp.*, 150 B.R. 592 (Bankr.M.D.Pa.1993).

■ There is no indication that the estate of Metropolitan Metals is solvent as that

term is normally understood in bankruptcy parlance.[1]

The other two circumstances first require that the creditor be deemed secured vis-a-vis the bankrupt. It is critical to note that the Internal Revenue Service levy encumbered property of Joseph and Caroline Enos, i.e., the receivable owing Enoses, and not that of the bankrupt, Metropolitan Metals.

■ In levying on an account receivable, the Internal Revenue Service is said to be given the option of collecting the debt on behalf of the taxpayer or selling the seized property. *Cash v. United States*, 961 F.2d 562, 567 (5th Cir.1992), *cert. denied*, 506 U.S. 985, 113 S.Ct. 492, 121 L.Ed.2d 430 (1992). The levy, itself, is in the nature of an "involuntary assignment" of the Enoses' receivable. *United States v. Hemmen*, 51 F.3d 883, 891 (9th Cir.1995) ("The actual operation of the levy is, thus, practically indistinguishable from a creditor's voluntary transfer of a claim."). The levy is a virtual transfer to the government of the indebtedness. *Cross Electric Co. v. United States*, 664 F.2d 1218, 1220 (4th Cir.1981).

> It does not invade the jurisdiction of the Bankruptcy Court or interfere with the administration of the estate. It merely serves notice on the receiver or trustee that whatever funds otherwise would be paid to the taxpayer shall instead be paid to the government as the distrainor, to the extent of the amount due it. We are here on familiar ground. A creditor may voluntarily transfer his claim against a bankrupt estate without obtaining the approval of the Bankruptcy Court. 3 Collier on Bankruptcy (14th ed.1966), § 57.06. We deem the levy to be similar in effect to an assignment, albeit involuntary on the part of the creditor of the bankrupt. In another sense, since the assignment constitutes a claim to intangible property which is not immediately reducible to possession it also has the characteristic of a lien.

*In re Quakertown Shopping Center, Inc.*, 366 F.2d 95, 98 (3rd Cir.1966).[2]

---

**1.** "[Insolvency] [u]nder the Bankruptcy Act ... means an insufficiency of assets at a fair valuation to pay the debts." *Finn v. Meighan*, 325 U.S. 300, 303, 65 S.Ct. 1147, 1149, 89 L.Ed. 1624 (1945).

**2.** While Quakertown involved a post-petition levy on a bankrupt estate, I view that fact as inconsequential on the applicability of the language cited.

■ Inasmuch as the government is, in effect, an assignee, or lienor of the Enoses, and a creditor of Metropolitan Metals, it is entitled to be paid out of the dividends which Enoses would otherwise receive. "[I]t is commonly understood that in a levy proceeding, 'the IRS steps into the taxpayer's shoes.'" *Congress Talcott Corp. v. Gruber*, 993 F.2d 315, 319 (3rd Cir.1993), *citing United States v. National Bank of Commerce*, 472 U.S. 713, 725, 105 S.Ct. 2919, 2927, 86 L.Ed.2d 565 (1985). Such a conclusion would logically limit the government's maximum entitlement from the estate to the "dividend" due the Enoses. Case law, nonetheless, has established that the government succeeds not only to the position of the claimant, but enjoys a priority up to the face amount of the claim. *Cherry Valley Homes, Inc.*, 255 F.2d 706 (3rd Cir.1958), *cert. denied.* While this priority may appear to interfere with the equality of distribution to creditors of the same class contemplated by the Bankruptcy Act, that argument has been considered and rejected by our highest court. *Small Business Administration v. McClellan*, 364 U.S. 446, 452, 81 S.Ct. 191, 196, 5 L.Ed.2d 200 (1960). Such a bias in favor of the government has deep roots in the English law designed to effect a public policy of prioritizing debt owing the government so as to provide sufficient revenue for the national coffers. *United States v. Moore*, 423 U.S. 77, 81–82, 96 S.Ct. 310, 313–14, 46 L.Ed.2d 219 (1975). To such an end, the governing statute is interpreted liberally in favor of the government. *Id.* at 86, 96 S.Ct. at 315. The levy, therefore, has the effect of upgrading the Enoses' claim, subject to the Internal Revenue Service levy, to priority status.

While there would generally be no reason why interest on the levy should not accrue to the extent that the Enoses' claim could support such award, I view the affixing of priority status on the interest as affecting the equities of such a conclusion. "[I]t would be unjustified to consider that the levy has the effect of carving out of the ... bankruptcy the government's claim with interest until the date of payment...." *In re Quakertown Shopping Center, Inc.*, 366 F.2d 95, 98 (3rd Cir.1966).

■ "[T]he touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). As indicated, this Court accepts the elevation of the Enoses' claim, while it is subject to the levy of the Internal Revenue Service, to priority status. I recognize that this process effectively reduces the potential distribution to unsecured creditors by creating a class superior in priority to those unsecured claims. This is a specific result of the interplay between § 64a(5) of the Act and 31 U.S.C. § 191.

■ Initially, I observe that 31 U.S.C. § 191 does not address accruing interest on the government obligation and thus does not require this Court to allow the government a priority for the post-petition interest portion of its claim. In fact, interest is not normally allowed to a tax claim in bankruptcy unsecured by estate property. *City of New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). There is also significant authority that interest does not accrue on tax liens in Act cases. *In re Boston & Maine Corporation*, 719 F.2d 493 (1st Cir.1983) *cert. denied* 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984), *United States v. Harrington*, 269 F.2d 719 (4th Cir.1959), *In re Ron Pair Enterprises*, 828 F.2d 367 (6th Cir.1987), (Code case interpreting pre-code law), *In re Kerber Packing Company*, 276 F.2d 245 (7th Cir.1960), *U.S. v. Bass*, 271 F.2d 129 (9th Cir.1959), *U.S. v. Mighell*, 273 F.2d 682 (10th Cir.1959). At best, it is plainly a matter of equity whether interest will be allowed to accumulate against the fund. *In re Blue Coal Corp.*, 150 B.R. 592 (Bankr.M.D.Pa. 1993).

We believe that the decisions of this Court in Sexton and Saper, reflect the broad equitable principle that creditors should not be disadvantaged vis-a-vis one another by legal delays attributable solely to the time-consuming procedures inherent in the administration of the bankruptcy laws. In the context of interest-bearing debts, the equitable principle enunciated in

Sexton and Saper rests at bottom on an awareness of the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate.

*Nicholas v. United States*, 384 U.S. 678, 683–684, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966) (footnotes omitted).

 The claim at issue did not arise as a result of the failure of Metropolitan to pay its taxes. Rather, it was Metropolitan's obligation to the Enoses that forms the subject matter of this litigation. Under general principles of bankruptcy law, that obligation would enjoy no preferred status. The levy of the Internal Revenue Service, however, has elevated a portion of the Enoses' claim subject to the levy, to a priority position. While the dynamics of that shift for the benefit of the sovereign are accepted by this Court, the detrimental impact on the nonpriority creditors is apparent. That the Enoses would eventually bear the ultimate obligation to pay whatever deficiency remains on their own tax, appears appropriate and equitable. That the bankrupt estate should shoulder the expense of accumulated interest on the levy to the detriment of the nonpriority class of creditors and the corresponding benefit of the delinquent taxpayer, reeks of injustice and inequity. It is, therefore, this Court's conclusion that claim 134, as amended, does not accrue interest, against the estate, after the date of filing.

The conclusion that interest would not run on the government claim against the estate does not mean that interest on the obligation owing the Internal Revenue Service by the Enoses would cease. Interest would continue to accrue on that obligation until such time as the tax, with interest, is paid. *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), *Hugh H. Eby Co.*

*v. U.S.*, 456 F.2d 923 (3rd Cir.1972). The proposition that claims do not accrue postpetition interest is a device designed to minimize inequality of treatment in the distribution of estate funds to the creditors. *Nicholas v. United States*, 384 U.S. 678, 682, 683, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966). Absent an adverse impact on the distribution of these dividends to the bankruptcy claimants, there is no bankruptcy theory that would prevent the accrual of interest against the taxpayer. *Leeper v. Pennsylvania Higher Education Assistance Agency*, 49 F.3d 98 (3rd Cir.1995). The Enoses would continue to be primarily liable for the interest on the tax obligation.

Lastly, inquiry is made as to the ability of this Court to determine the liability of each entity for the interest accruing on claim 134.

 31 U.S.C. § 192, as applicable to bankruptcy cases filed under the Act of 1898, exposes a fiduciary to personal liability for the unpaid portion of an obligation owing the United States under 31 U.S.C. § 191, if the fiduciary should make a prior payment to another creditor before the United States is satisfied.[3] A bankruptcy trustee, under the Act of 1898, is subject to this provision. *Small Business Administration v. McClellan*, 364 U.S. 446, 450, 81 S.Ct. 191, 194–95, 5 L.Ed.2d 200 (1960).

The Enoses argue the bankruptcy trustee is liable for the entire amount of claim 134 with interest, because he made prior payments to various creditors, including administrative creditors, without paying the United States under claim 134.

By virtue of 31 U.S.C. § 192, the bankruptcy trustee would be personally liable for any deficiency in distribution caused by his expenditure of estate funds for claims that are inferior in status to that of the Internal Revenue Service. Since a record of those expenditures has not been made a part of this pending matter, I make no specific determination of that, although it is reasonable

---

**3.** 31 U.S.C. § 192. Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United

States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

to conclude that such exposure by the trustee under that statute should not exceed the total liability of the estate for claim 134, as amended, had the trustee not made the expenditures considered to be in violation of 31 U.S.C. § 192.

The Enoses assume the Internal Revenue Service levy entitled the Internal Revenue Service to immediate payment from Metropolitan of the full amount of the claim, i.e., $232,000. There is no indication that Metropolitan had sufficient funds to pay the levy at the time of the levy. Indeed, the Internal Revenue Service and Metropolitan entered into a payment arrangement specifically alluding to the inability of Metropolitan to make immediate payment without a deleterious influence on current operations.[4] Thereafter, Metropolitan filed bankruptcy. At that point in time, it was speculative whether the levied Enoses' receivable would receive any distribution.

The Enoses argue that Trustee DeHart breached his fiduciary duty under 31 U.S.C. § 192 by not immediately "surrendering" to the Internal Revenue Service a fund sufficient to satisfy the levy. This position completely misapprehends the impact of the Internal Revenue Service levy on the "property" of the taxpayer. "In a levy proceeding, the IRS 'steps into the taxpayer's shoes,'.... The IRS acquires whatever rights the taxpayer himself possesses." *United States v. National Bank of Commerce,* 472 U.S. 713, 725, 105 S.Ct. 2919, 2927, 86 L.Ed.2d 565 (1985) (citations omitted).

In this Court's opinion, Enoses fail to recognize the actual subject matter of the Internal Revenue Service levy. It is not a fund of $300,000 which is subject to the levy, but the prospective right of the Enoses to collect $300,000 from Metropolitan. Just as in *In re Quakertown Shopping Center, Inc.,* 366 F.2d 95 (3rd Cir.1966), the only property of the taxpayer that the trustee had in his possession was the Enoses' claim against the estate of Metropolitan. It was this claim

that was effectively transferred to the Internal Revenue Service by the levy. *United States v. Ruff,* 99 F.3d 1559, 1566 n. 3 (1996) *interpreting, In re Quakertown Shopping Center, Inc.,* 366 F.2d 95, 98 (3rd Cir.1966).

As was observed earlier, the Enoses are ultimately liable for the tax and the entire amount of unpaid interest on the tax. Notwithstanding that conclusion, I recognize the Enoses may argue that by agreeing to payment terms with Metropolitan, the Internal Revenue Service exercised such control and dominion over the account receivable owing the Enoses by Metropolitan that the Internal Revenue Service may be required to credit the taxpayer for the full amount of the value of the receivable levied upon. *Barlows, Inc. v.. United States,* 36 B.R. 826, 829 (Bankr. E.D.Va.), *aff'd,* 53 B.R. 986 (E.D.Va.1984), *aff'd,* 767 F.2d 1098 (4th Cir.1985). The impact of such a conclusion on the Enoses' future liability would be pivotal. Nevertheless, in recognizing the Enoses' overall liability to pay their taxes, including interest, I will take no position as to whether they would have any defenses to such claim. A finding as to the ultimate availability of various defenses by the Enoses to the Internal Revenue Service does not appear to be necessary for the enforcement of the provisions of the Act, § 21a(15). 11 U.S.C. § 11(a)(15).

---

**4.** "I appreciate that you are cooperating with us so that this account can be paid in a manner consistent with continuing business...." Letter of Attorney Bruce. D. Foreman, counsel for

Metropolitan Metals, to the Internal Revenue Service dated December 15, 1978. (Stipulation of Facts 10/3/84 ¶ 8.)