
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re: <br> RAMIN POURTEYMOUR, <br>         Debtor. | BAP Nos. SC-22-1008-GFB <br> SC-22-1009-GFB <br> SC-22-1010-GFB <br> (Related Appeals) |
| FIRST FOUNDATION BANK, <br>         Appellant, | Bk. No. 20-05522-CL11 |
| v. <br> RAMIN POURTEYMOUR, <br>         Appellee. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Chief Bankruptcy Judge, Presiding

Before: GAN, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Appellant First Foundation Bank ("FFB") appeals the bankruptcy

court's order (the "Dismissal Order") dismissing the chapter 11[1] case of

debtor Ramin Pourteymour ("Debtor"). FFB also appeals the orders

denying its motion to compel rejection of a postpetition lease and its

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

motion to compel Debtor to account for and turn over all net rents received from a property in which FFB held a security interest.

FFB does not contest the court's finding of "cause" under § 1112(b), and it does not directly challenge the court's determination that dismissal, rather than conversion, was in the best interests of creditors and the estate. Instead, it argues that the Dismissal Order violated the Supreme Court's holding in *Czyzewski v. Jevic Holdings Corp.*, 137 S. Ct. 973 (2017) ("*Jevic*"), because it expressly or implicitly provided for a structured dismissal which deviated from the ordinary priority scheme under the Bankruptcy Code.

The Dismissal Order clearly states that dismissal is not conditioned on any payment to creditors and operates, as directed by § 349, to return the parties to the prepetition status quo. Neither the bankruptcy court's statements made at the hearing—which FFB quotes out of context—nor Debtor's conduct after dismissal transforms the express ruling of the court into an implied structured dismissal.

The bankruptcy court correctly applied the law in dismissing the case, and FFB's motions to compel were moot upon dismissal. We AFFIRM.

## FACTS[2]

### A. Prepetition events and Debtor's bankruptcy

FFB made three loans to Debtor to purchase, refinance, or renovate two parcels of real estate in La Jolla, California: a property located on Blackgold Road ("Blackgold") and a property located on Box Canyon Road ("Box Canyon"). After a disruption in rental income, Debtor ceased payments on the loans, and in November 2020, he filed a chapter 11 petition to prevent foreclosure.

Debtor's schedules indicate he was a self-employed real estate investor. His principal assets consisted of: (1) Blackgold, which he valued at $3,735,000; (2) Box Canyon, which he valued at $2,500,000; (3) a condominium, which he valued at $340,000; and (4) financial assets, including membership interests in several real estate investment LLCs, having a total value of $1,743,917.04.

FFB filed four proofs of claim: (1) a senior claim for $4,572,080.51 secured by Blackgold; (2) a junior claim for $3,080,478.33 secured by Blackgold; (3) a claim for $2,710,104.07 secured by Box Canyon; and (3) an unsecured claim for $1,419,574.64 based on Debtor's personal guaranty of a loan to a real estate LLC.

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Debtor obtained an order authorizing use of cash collateral generated by Blackgold and Box Canyon, and he moved to value the properties for the purpose of proposing a plan of reorganization. After several months of litigation, the parties stipulated to value Blackgold at $6,000,000 and Box Canyon at $3,710,035.

In July 2021, FFB filed a motion for stay relief to foreclose on Blackgold. The bankruptcy court granted stay relief, and FFB conducted a non-judicial foreclosure, taking title to Blackgold through a credit bid of its junior lien.

**B.    FFB's motions to compel turnover and to compel rejection of a postpetition lease**

After taking title to Blackgold, FFB filed a motion to compel Debtor to account for and turn over all net rents generated by the property. FFB alleged that Debtor had been collecting monthly rents of at least $28,500 and was holding approximately $265,000 in his debtor in possession account ("DIP Account") at the time of the foreclosure. FFB argued that pursuant to § 542 it was entitled to a detailed accounting of all rents generated from Blackgold and an order requiring Debtor to pay those rents to FFB.

FFB also filed a motion to compel rejection of Debtor's postpetition lease of Blackgold, which it claimed Debtor concealed. It argued the lease was voidable under § 549 because Debtor did not obtain court approval to lease the property under § 365.

In opposition, Debtor argued that FFB was not entitled to the DIP Account funds because FFB foreclosed its junior lien, and the senior deed of trust did not expressly grant FFB a security interest in the rents. Debtor maintained that FFB lacked standing to assert an action under § 549, and it was attempting to circumvent California law which required a post-foreclosure property owner to honor the terms of a residential lease agreement.

## C. Debtor's motion to dismiss and the court's rulings

After FFB foreclosed, Debtor filed a motion to dismiss the case. He argued that cause existed to dismiss the case under § 1112(b) based on his loss of Blackgold, which constituted a material change of circumstances that impacted his ability to fashion an equitable plan of reorganization. Debtor asserted that dismissal was in the best interests of creditors because it would avoid further expense, and if the case were dismissed, Debtor would pay all claims over time. He also suggested that liquidation of assets under chapter 7 would result in additional tax liability resulting from depreciation recapture. Debtor proposed that the dismissal order include language obligating him to use the DIP Account funds to pay property taxes, administrative fees, and prepetition arrears on secured debts as a condition of dismissal.

The United States Trustee ("UST") opposed Debtor's motion and argued that Debtor failed to demonstrate dismissal was in the best interests of creditors and the estate because his motion lacked a clear and complete

5

liquidation analysis. The UST suggested that conversion would benefit creditors because it would allow a neutral trustee to evaluate, and possibly settle, potential litigation against FFB, and realize the true value of Debtor's various property interests.

FFB also opposed Debtor's motion, arguing that Debtor's loss of Blackgold was irrelevant to whether the case should be dismissed because it would have contributed little to Debtor's reorganization efforts. FFB also maintained that Debtor failed to demonstrate that dismissal was in the best interests of creditors, and creditors would rather receive distributions from an orderly liquidation.

In reply, Debtor provided a table of assets and debts showing that liquidation under chapter 7 would result in payment of 59% of unsecured claims, while dismissal would result in full payment. Debtor suggested he could withdraw his share of cash from his LLC interests and had access to $2,000,000 in loans from his LLC partners. He proposed as a condition of dismissal to use DIP Account funds and non-estate assets to cure the arrearage on Box Canyon, pay administrative claims, and pay all current unsecured claims immediately upon dismissal.

On November 8, 2021, the bankruptcy court held a hearing on FFB's motions to compel and Debtor's motion to dismiss. Prior to the hearing, the court issued tentative rulings indicating it would deny FFB's motions because: (1) FFB lacked standing to bring an action under §§ 542, 365 or

549; (2) § 365 does not apply to postpetition leases; and (3) Debtor had authority to lease Blackgold in the ordinary course of business.

At the hearing, the court stated its intent to adopt the tentative rulings but decided to delay its decision and consider the motions in the context of Debtor's motion to dismiss. Regarding dismissal, the court expressed concern that Debtor's statements about obtaining funds and paying creditors was not substantiated or enforceable. The court continued the hearing to December 16, 2021, to allow Debtor to prove his access to the non-estate funds and to file a clear accounting of how those funds would be disbursed upon dismissal.

Prior to the continued hearing, Debtor filed a status report and declaration stating that, in addition to funds in the DIP Account and Debtor's operating account, he had borrowed an additional $2,175,000 from his partners and deposited the non-estate funds in his attorney's trust account. He provided a schedule of the current allowed claims he proposed to pay upon dismissal and a liquidation analysis indicating the likely distribution to creditors if the case were converted to chapter 7. Debtor indicated that Farzaneh Berry, an unsecured creditor with a claim for $702,000, agreed to waive her right to be paid upon dismissal.

In his status report, Debtor noted that in November 2021, FFB amended its senior claim against Blackgold to reflect a general unsecured claim for $1,167,643.18 (the "Disputed FFB Claim"). Debtor filed an objection to the Disputed FFB Claim and argued that FFB lacked a basis

7

under California law to assert a deficiency claim prior to selling the property.

Debtor proposed a structured dismissal that would pay all arrears, administrative claims, and unsecured creditors other than the Disputed FFB Claim, and he maintained that the proposal would not violate *Jevic* because the Disputed FFB Claim was within the same class as other unsecured creditors and consequently, no claims would be paid out of priority. Alternatively, he proposed to reserve FFB's pro-rata share pending resolution of his claim objection, which would result in a dividend to unsecured creditors of 89.8%, and full payment from the reserve if Debtor prevailed.

FFB argued both proposed dismissals would violate *Jevic*. The UST also expressed concerns about violating the priority scheme of the Bankruptcy Code and urged the court to decide Debtor's claim objection before dismissing the case.

At the continued hearing, the court expressed concern that Debtor's proposals might violate *Jevic*, and it questioned whether in the absence of conditioning dismissal on payment creditors' best interests might still be served by dismissal rather than conversion. In response to the UST's argument that Debtor's promise to pay all claims upon dismissal could prove illusory, the court noted that the representations made by Debtor and his counsel to the court meant something and the court expected they

would keep their word. The court took the matter under submission, and on December 27, 2021, it entered the Dismissal Order.

The bankruptcy court found cause to dismiss or convert the case under § 1112(b) based in part on the material change in circumstances caused by the loss of Blackgold. The court then analyzed, pursuant to § 1112(b)(1), whether the interests of creditors and the estate were better served by appointing a trustee and whether, under § 1112(b)(2), unusual circumstances existed to warrant neither converting nor dismissing the case. It decided against both.

The court then considered the alternatives proposed by Debtor and the UST. It concluded that both of Debtor's proposed structured dismissals would violate either the holding or the spirit of *Jevic*. The court noted that the UST's proposal would likely aid in the decision whether to convert or dismiss and would avoid violating *Jevic*, but because of the litigation costs and added delay, it was not in the best interests of creditors and the estate.

After ruling out the proposed alternatives, the bankruptcy court engaged in a balancing test to decide whether to convert or dismiss the case under § 1112(b). The bankruptcy court applied the factors identified in *Rand v. Porsche Financial Services, Inc. (In re Rand)*, BAP No. AZ-10-1160-BaPaJu, 2010 WL 6259960 (9th Cir. BAP Dec. 7, 2010),[3] and determined that

---

[3] The factors identified in *Rand* are:

(1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

(2) Whether there would be a loss of rights granted in the case if it were

dismissal, rather than conversion, was in the best interests of creditors and the estate. After dismissing the case, the bankruptcy court entered orders denying FFB's motion to compel turnover and its motion to compel rejection of the lease as moot. FFB timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion by dismissing Debtor's case?

---

dismissed rather than converted.

(3) Whether the debtor would simply file a further case upon dismissal.

(4) The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5) In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6) Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7) Whether the estate consists of a "single asset."

(8) Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9) Whether a plan has been confirmed and whether any property remains in the estate to be administered.

(10) Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Rand*, 2010 WL 6259960, at *10 n.14 (citing 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)).

10

Did the bankruptcy court err by denying FFB's motions to compel turnover and to compel rejection of a postpetition lease?

## STANDARDS OF REVIEW

We review the bankruptcy court's decision to dismiss a case under § 1112(b) for abuse of discretion. *See Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 611 (9th Cir. BAP 2014). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We review de novo the bankruptcy court's denial of FFB's motions to compel as moot. *See Brennan v. Opus* Bank, 796 F.3d 1125, 1128 (9th Cir. 2015). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. 2014).

## DISCUSSION

FFB argues the bankruptcy court erred by dismissing the case because the Dismissal Order either expressly or impliedly violates *Jevic*. It asserts that dismissal was conditioned on Debtor making payments to some, but not all, unsecured creditors and, although the Dismissal Order purports to be a straight dismissal, in substance it provides for a structured dismissal that deviates from the priority scheme under the Bankruptcy Code. FFB argues that the bankruptcy court should have compelled Debtor

11

to account for and pay to FFB its accumulated rents and should have compelled Debtor to reject the postpetition lease of Blackgold.

## A.    Legal standards under § 1112(b)

Section 1112(b) provides that on request of a party in interest "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." Section 1112(b)(4) provides a non-exhaustive list that establishes cause to convert or dismiss, but bankruptcy courts can consider other factors, and they have broad discretion to determine what constitutes "cause" under § 1112(b). *See In re Sullivan*, 522 B.R. at 614.

Once a bankruptcy court has determined that cause to convert or dismiss exists, it must apply a "balancing test," based on the best interests of creditors and the estate, to decide between conversion and dismissal. *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 729 (9th Cir. BAP 2008) (citing *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006)).

## B.    The Dismissal Order does not violate *Jevic*.

The Bankruptcy Code establishes a basic system of priority which must be followed under chapter 7, and which may be altered under chapter 11 with consent of affected parties. *Jevic*, 137 S. Ct. at 979. Because the priority scheme is fundamental to the operation of the Bankruptcy Code,

12

bankruptcy courts cannot "alter the balance struck by the statute." *Id.* at 984, 987 (quoting *Law v. Siegel*, 571 U.S 415, 427 (2014)).

In *Jevic*, the Supreme Court reasoned that chapter 11 foresees three possible outcomes: (1) a confirmed chapter 11 plan; (2) conversion to chapter 7; or (3) dismissal of the case, which "aims to return to the prepetition financial status quo." *Id.* at 979. When a bankruptcy court dismisses a case, property of the estate ordinarily revests in the debtor and creditors retain their legal remedies. *See* § 349; *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1414 (9th Cir. 1985). Although structured dismissals requiring payment of claims as a condition of dismissal are not prohibited, the Supreme Court held a bankruptcy court cannot "approve a structured dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent." *Jevic,* 137 S. Ct. at 983.

Here, the bankruptcy court considered and expressly rejected both of Debtor's proposed structured dismissals after determining they would violate *Jevic*, and it did not condition dismissal on payment to any creditor. Instead, the court stated that property of the estate would revest pursuant to § 349, and it expressly took no position on the parties' respective obligations or remedies if Debtor decided to use DIP Account funds to pay creditors after dismissal. In other words, the Dismissal Order provided for a straight dismissal.

13

FFB argues the Dismissal Order contravenes *Jevic* by not requiring payment of its unsecured claim upon dismissal because the absolute priority rule would prevent Debtor from retaining substantial assets without paying FFB's claim under a confirmed chapter 11 plan. The Bankruptcy Code does not impose the same burdens and requirements on dismissal as confirmation. FFB retained its rights and remedies under state law and dismissal merely returned the parties to the prepetition financial status quo.

FFB alternatively argues that the Dismissal Order provided for an implied structured dismissal because Debtor confirmed that he would pay some unsecured creditors even if the Dismissal Order was unconditional. FFB asserts that Debtor's conduct after dismissal demonstrates that he believed the payments were required by the Dismissal Order and the bankruptcy court relied on Debtor's pledge to make the payments. Thus, FFB argues, those payments were an implied condition of the Dismissal Order. We disagree.

Debtor's statements about paying creditors and his understanding of the court's order do not alter the effect of the Dismissal Order, which plainly provides for a straight dismissal. And the bankruptcy court did not implicitly condition dismissal on payments to creditors. FFB argues that at the hearing, the court was "adamant" that Debtor make the payments to unsecured creditors upon dismissal "or else," but this mischaracterizes the court's statements. The bankruptcy court suggested—in response to the

14

UST's argument that conversion was preferable because there was no guaranty Debtor would pay creditors upon dismissal—that Debtor and his counsel's representations to the court meant something, but it did not rule that Debtor was required to pay creditors as a condition of dismissal. The bankruptcy court did not incorporate any statements made at the hearing into its decision; the Dismissal Order contains the entirety of the court's reasoning.

Furthermore, the bankruptcy court did not improperly rely on Debtor's pledge to pay unsecured creditors. In analyzing the best interests of creditors and the estate, the court reasoned that the non-estate funds borrowed by Debtor, and the concession by Ms. Berry, would inherently benefit all creditors. Even if Debtor did not pay all claims upon dismissal, remaining creditors would be in a better position to collect against Debtor's assets and would have fewer claims to compete against.

The bankruptcy court handled the dispute over Debtor's dismissal commendably. It discussed its concerns with the parties, explored their arguments, and allowed time for the issue to play out. After the parties fully briefed and argued their positions, the court entered a thorough written order, rejecting Debtor's proposed structured dismissals, and correctly applying the law under § 1112(b).

To accept FFB's argument, we would have to disregard the bankruptcy court's written order, which expressly provides for a straight dismissal, and instead review the court's oral comments as it evaluated the

15

parties' arguments. This would be exactly backwards: written decisions always supersede the court's oral comments. *Rawson v. Calmar S.S. Corp.*, 304 F.2d 202, 206 (9th Cir. 1962) ("[T]he oral comments of the trial court in announcing its decision . . . [are] superseded by the findings of fact. The trial judge is not to be lashed to the mast on his off-hand remarks in announcing decision prior to the presumably more carefully considered deliberate findings of fact.").

The Dismissal Order does not violate the holding of *Jevic* because it provides for a straight dismissal in accordance with § 349, and it neither expressly nor impliedly conditions dismissal on payments to creditors.

**C.** **The bankruptcy court did not abuse its discretion by finding cause to dismiss or convert the case or by deciding that dismissal was in the best interests of creditors and the estate.**

FFB does not argue that the bankruptcy court erred by finding cause under § 1112(b) or by determining that dismissal was in the best interests of creditors and the estate.[4] We discern no abuse of discretion.

The bankruptcy court properly evaluated the circumstances of the case and found cause to dismiss or convert. Debtor's purpose for filing the

---

[4] Although FFB argues that the court erred by relying on Debtor's promise to pay creditors, it does not explain how such alleged error affected the court's balancing test or how it resulted in an abuse of discretion. "We will not consider arguments that were not raised specifically and distinctly in the opening brief." *Todeschi v. Juarez (In re Juarez)*, 603 B.R. 610, 622 n.10 (9th Cir. BAP 2019). FFB does not argue that conversion was a better alternative. Instead, it asks us to "completely reverse the impermissible Dismissal Order."

case was obviated by the loss of Blackgold, and without sufficient rental income, his prospects for reorganization were greatly diminished. The court correctly applied the law by analyzing whether appointing a trustee would better serve interests of creditors and the estate and by evaluating whether unusual circumstances existed to prevent dismissal or conversion. Finally, the court appropriately performed a multifactor balancing test between conversion and dismissal.

**D.    The bankruptcy court properly denied FFB's motions to compel.**

Because the bankruptcy court dismissed Debtor's case, it correctly denied FFB's motions to compel as moot. Upon dismissal, property of the estate revested in Debtor, subject to all encumbrances which existed prior to the case, and FFB retained its legal remedies.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's orders dismissing the case and denying FFB's motions to compel as moot.